# 2006 DTA 31

**TRIBUNAL DE CIRCUITO DE APELACIONES
REGIÓN JUDICIAL DE PONCE
PANEL X**

ILIA FIGUEROA MORALES; RAMÓN GARCÍA ORTIZ
Demandantes

v.

ESTADO LIBRE ASOCIADO DE PUERTO RICO; DR. MARCOS GONZÁLEZ, SU ESPOSA Y LA SOCIEDAD LEGAL DE GANACIALES COMPUESTA POR AMBOS; SOCIEDAD OBSTÉTRICO GINECOLÓGICA DEL SUR; DR. ALBERTO AVILÉS COLLADO, SU ESPOSA Y LA SOCIEDAD LEGAL DE GANACIALES COMPUESTA POR AMBOS; COMPAÑÍAS ASEGURADORAS ABC Y DEF; SEGUROS TRIPLE S; JOHN DOE
Apelantes

v.

PONCE PEDIATRIC ASSOCIATES, INC. REPRESENTADA POR LA DRA. IVONNE VILLAFAÑE, PRESIDENTA; DRA. IVONNE VILLAFAÑE, SU ESPOSO FULANO DE TAL Y LA SOCIEDAD LEGAL DE GANANCIALES Y SU COMPAÑÍA DE SEGURO DESCONOCIDA; DR. JOSÉ FOURQUET CRUZ, SU ESPOSA MENGANA DE TAL Y LA SOCIEDAD LEGAL DE GANANCIALES Y SU COMPAÑÍA DE SEGURO DESCONOCIDA, PERSONAS NATURALES O JURÍDICAS DESCONOCIDAS A, B, y C; DR. JOHN DOE, SU ESPOSA JANE DOE Y LA SOCIEDAD LEGAL DE GANANCIALES Y SU COMPAÑÍA DE SEGURO DESCONOCIDA
Apelados

Núm. KLAN-05-01036

San Juan, Puerto Rico, a 20 de diciembre de 2005

Panel integrado por su Presidente, el Juez Brau Ramírez, el Juez Colón Birriel y la Juez Hernández Torres

Brau Ramírez, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

**I**

Se trata de una demanda por daños y perjuicios por mala práctica de la medicina instada por Ilia Figueroa Morales y Ramón García Ortiz. La demanda está relacionada al tratamiento médico brindado a la apelada Ilia Figueroa Morales en el Hospital Regional de Ponce el 12 de julio de 1996, cuando la demandante estaba de parto.

Para esa época, el Hospital Regional de Ponce pertenecía y era administrado por la parte apelante, el Estado Libre Asociado de P.R. El E.L.A. había contratado a la entidad profesional Sociedad Obstétrico-Ginecológica del Sur (*"Sociedad Obstétrico-Ginecológica"*), compuesta por varios profesionales de la salud, para que ésta prestara servicios de obstetricia y ginecología en el Hospital.

Mediante un contrato suscrito más temprano ese año, en enero de 1996, el Departamento de Salud y la Administración de Facilidades y Servicios de Salud (*"A.F.S.S."*) también habían contratado a la corporación Ponce Pediatrics Associates, Inc. (*"Ponce Pediatrics"*), para que ésta se hiciera cargo de los servicios de pediatría a ser ofrecidos en el Hospital.

Entre otros acuerdos, Ponce Pediatrics se hizo responsable de responder ante el Departamento de Salud y A. F.S.S. por los daños y perjuicios que pudieran ser ocasionados por el desempeño negligente de sus obligaciones bajo el contrato.

La Jefatura del Departamento de Pediatría fue asignada por Ponce Pediatrics a la apelada, Dra. Ivonne Villafañe Candelas, quien era presidente y empleada de dicha corporación.

Bajo los términos del acuerdo entre Ponce Pediatrics y las agencias de Salud del E.L.A., la Dra. Villafañe era responsable de supervisar a los médicos especialistas (*"attending physicians"*) del Departamento de Pediatría y de verificar, desde el punto de vista administrativo, que éstos cumplieran con los reglamentos vigentes del Hospital.

La Dra. Villafañe tenía la facultad de designar a los médicos responsables de atender cada servicio y de realizar las guardias relacionadas con el Departamento de Pediatría. La Dra. Villafañe, sin embargo, no supervisaba a los médicos contratados por el E.L.A. que cursaban su entrenamiento en Pediatría en el Hospital y que asistían a los *"attending physicians"* durante las guardias. La Dra. Villafañe tampoco atendía pacientes. Sus funciones eran más bien de naturaleza administrativa, de coordinar los servicios prestados por los componentes del Departamento de Pediatría.

Entre otros pediatras del grupo médico de Ponce Pediatrics se encontraba el apelado, Dr. José Fourquet Cruz, quien era el *"attending physician"* encargado de pediatría el día de los hechos.

**907**

El día de los hechos, como a las 6:00 de la mañana, la demandante compareció a la Sala de Emergencia del Hospital, presentando síntomas de parto. Fue admitida al Hospital y colocada bajo observación en un pasillo contiguo a la sala de parto. Luego de varias horas, la demandante desarrolló complicaciones, que afectaron a su bebé. Según los apelados, los doctores de la Sociedad Obstétrico-Ginecológica que atendieron a la demandante omitieron darle un seguimiento apropiado, por lo que no se percataron de manera oportuna de lo que estaba sucediendo.

A las 12:30 del mediodía, luego de varias horas, la demandante fue sometida a una operación de cesárea de emergencia. La demadante dio a luz a una niña, la que nació en malas condiciones.

La niña fue referida al área de Pediatría, donde fue atendida de emergencia por una de las residentes de dicho Departamento, la Dra. Altagracia Fullana Hernández, quien era empleada del E.L.A. La Dra. Fullana entubó a la bebé. Las notas de la Dra. Fullana reflejan que el tubo se salió, por lo que ésta procedió a entubarla nuevamente. Los apelantes alegan que la Dra. Fullana fue negligente al realizar este procedimiento y que entubó a la bebé, no en la tráquea, sino en el esófago, lo que le causó daños irreparables.

Posteriormente, compareció el Dr. Fourquet, quien era el *"attending physician"* de Pediatría y asumió el tratamiento de la niña.

La bebé falleció poco después, 45 minutos luego de su nacimiento.

No existe controversia entre las partes en torno a que la Dra. Villafañe, Jefa de Pediatría del Hospital, no intervino en el tratamiento de la bebé.

Oportunamente, en julio de 1997, los demandantes instaron la presente demanda por daños y perjuicios contra Sociedad Obstétrico-Ginecológica, y contra numerosos de los facultativos del Hospital, incluyendo al Dr. Fourquet, así como contra los cónyuges de éstos.

Posteriormente, en mayo de 2000, los demandantes solicitaron enmendar su demanda para incluir en el litigio a Ponce Pediatrics y al E.L.A., a quienes imputaron la negligencia de los pediatras que atendieron a la demandante y a su bebé.

Ponce Pediatrics nunca fue emplazada. Los otros demandados contestaron la demanda, negando las alegaciones.

Poco después, los demandantes solicitaron desistir de su reclamación contra el Dr. Fourquet. Mediante sentencia parcial emitida el 1ro de junio de 2000, el Tribunal decretó el desistimiento de la demanda contra dicha parte, sin expresar que el desistimiento fuera con perjuicio. Aunque para ese momento el E.L.A. ya había sido unido al litigio y figuraba como parte demandada, no se opuso a la desestimación de la demanda. Tampoco intentó solicitar remedio alguno contra dicha parte.

No fue sino hasta casi cuatro años después, en enero de 2004, que el E.L.A. presentó una demanda contra tercero contra Ponce Pediatrics, la Dra. Villafañe, el Dr. Fourquet, los cónyuges de éstos, sus compañías de seguro, las que fueron identificadas mediante nombre ficticio. El E.L.A. alegó que los daños reclamados por los demandantes habían sido provocados por la negligencia de los terceros demandados, quienes habían contribuido a la producción de los daños y quienes le respondían directamente a los demandantes y al E.L.A., en caso de que este último tuviera que pagar por la demanda.

Al igual que en el caso de la demanda original, Ponce Pediatrics no fue emplazado por el E.L.A.

El Dr. Fourquet fue emplazado y solicitó la desestimación de la reclamación en su contra, alegando que el desistimiento por los apelados de su demanda contra él constituia cosa juzgada y que la reclamación del E.L.A. estaba prescrita. El E.L.A. se opuso a la moción de desestimación del Dr. Fourquet.

Por su parte, la Dra. Villafañe también presentó una moción de desestimación, alegando que la demanda contra tercero presentada contra ella no exponía hechos constitutivos de una causa de acción en su contra. Junto con su moción, la Dra. Villafañe sometió una declaración jurada en la que aseveraba que ella no había participado en el tratamiento de la apelada o de la menor y que tampoco participaba en la supervisión de los residentes de Pediatría. La Dra. Villafañe explicó que ella no atendía pacientes y que su responsabilidad era más bien de naturaleza administrativa. La Dra. Villafañe también sometió varios récords médicos relacionados al tratamiento de la menor los que reflejaban que ella no había tenido intervención en su tratamiento.

El E.L.A. replicó a la moción de desestimación de la Dra. Villafañe, alegando que ella respondía de la demanda, en virtud de su responsabilidad de supervisar a los médicos especialistas del Departamento de Pediatría.

Luego de otros trámites, y mientras las mociones de desestimación del Dr. Fourquet y de la Dra. Villafañe se hallaban pendientes de adjudicación, el 27 de enero de 2005, el E.L.A. solicitó enmendar su demanda para expresar el nombre de la compañía aseguradora de los Dres. Fourquet y Villafañe (S.I.M.E.D.). En ese momento, el E.L.A. también solicitó que se incluyera como tercero demandada a la apelada Seguros Triple S (*"Triple S"*), como compañía aseguradora de Ponce Pediatrics.

El E.L.A. solicitó que se emitieran emplazamientos contra dicha parte, lo que el Tribunal no hizo.

El 9 de mayo de 2005, el E.L.A. insistió nuevamente en que se emitieran emplazamientos contra Triple S.

Luego de otros trámites, el 10 de junio de 2005, el Tribunal de Primera Instancia emitió una sentencia parcial, declarando con lugar la moción de desestimación presentada por la Dra. Villafañe y ordenando la desestimación de la demanda contra tercero presentada por el E.L.A. contra dicha parte.

En su sentencia parcial, el Tribunal concluyó que no existía controversia real sustancial entre las partes en torno a que la Dra. Villafañe no había tenido participación alguna en el tratamiento ofrecido a la bebé.

El tribunal expresó:

*"[D]e un estudio de todo el expediente médico surge que no hubo intervención alguna de la Dra. Ivonne Villafañe Candelas, ya que no aparece su firma, ni su letra, ni aparece referencia a ésta tanto por el personal médico como paramédico que intervino en el caso. Surge de la Declaración Jurada que la Dra. Villafañe a esa fecha no atendía pacientes como parte de sus obligaciones, sino que sus funciones eran administrativas como Directora del Departamento de Pediatría por virtud del contrato entre el Departamento de Salud y Ponce Pediatrics. De una revisión de dicho contrato sometido por el E.L.A. en su moción en oposición, surgen los deberes de la Dra. Ivonne Villafañe, y entre éstos no está el brindar tratamiento médico a pacientes."*

Establecido el hecho de que no existe anotación alguna que indique que la Dra. Ivonne Villafañe Candelas intervino en el tratamiento médico de la menor, solamente nos resta decidir su responsabilidad, si alguna, como Directora del Departamento de Pediatría por virtud del contrato habido entre el Departamento de Salud (E.L.A.) y Ponce Pediatrics, Inc. De dicho contrato surge que la Dra. Villafañe no supervisaba a los médicos residentes del Programa de Residencia en Pediatría en el Hospital de Distrito de Ponce, ya que éstos eran supervisados diariamente por los llamados médicos *"attendings"*, esto es, por médicos pediatras ya certificados que estaban de guardia para atender pacientes. A esos efectos, de la Declaración Jurada de la Dra. Villafañe surge que ésta

no supervisaba dichos residentes como parte de su trabajo diario, ya que éstos eran supervisados y trabajaban en conjunto con los médicos "*attendings*" de pediatría que estuvieran de guardia para el día en cuestión. Se establece en la Declaración Jurada de la Dra. Villafañe que ésta no figuraba en el "*roster*" de guardia" en ese momento, ya que no tenía que atender pacientes como parte de sus obligaciones con Ponce Pediatrics, Inc. Las labores de la Dra. Villafañe con Ponce Pediatrics, Inc. eran administrativas, de coordinación de los servicios de todos los componentes del Departamento y no incluia la supervisión en cuanto a si un médico atendía o no correctamente a un paciente. La responsabilidad de la Dra. Villafañe es por virtud de sus funciones administrativas con la corporación Ponce Pediatrics, Inc.

La demanda contra terceros presentada por el E.L.A. en la forma redactada no aduce hechos constitutivos de una causa de acción por la cual pueda ser concedido un remedio en su día contra la doctora Villafañe. Habiéndose presentado una Declaración Jurada por la Dra. Ivonne Villafañe, ... la cual el E.L.A. no ha podido en forma alguna rebatir, no se ha establecido actuación u omisión alguna por parte de la Dra. Villafañe, ni se ha establecido controversia sobre ese aspecto que impida que en esa etapa de los procedimientos se declare con lugar la moción de desestimación.

El Tribunal procedió a desestimar la reclamación contra la Dra. Villafañe y contra el esposo de ésta.

Ese mismo día, 10 de junio de 2005, el Tribunal de Primera Instancia emitió una segunda sentencia sumaria parcial, desestimando la demanda contra tercero contra el Dr. Fourquet.

En su dictamen, el Tribunal concluyó que la acción contra el Dr. Fourquet estaba prescrita. El Tribunal concluyó que cualquier reclamación contra co-parte o contra tercero presentada contra una parte contra la cual se hubiera desistido debía ser presentada "*dentro del año de la sentencia de desistimiento.*"

El foro recurrido añadió:

"*A nuestro juicio, el desistimiento de la acción contra el demandado rompe la solidaridad entre ese demandado desistido y los demás co-deudores solidarios, por lo que los demás co-deudores no pueden invocar la solidaridad como base de la interrupción indefinida de la prescripción en cuanto a una acción eventual contra aquél.*"

El Tribunal también expresó:

"*El resultado a que llegamos está sostenido además, ..., en que constituye una derrota a los fines de la justicia interpretar que una parte que se allanó a un desistimiento de un demandado original pueda traerlo como tercero demandado no cuatro (4) años, sino 10 y 15 años con posterioridad a tal hecho, de estar ventilándose todavía la acción de daños. Esto atenta contra nuestra noción de lo que es justo y correcto en derecho.*"

El desistimiento de la acción contra el doctor Fourquet rompió la solidaridad con los demás causantes solidarios del daño, por lo que cualquier acción en su contra prescribió al año contado a partir de la sentencia de desistimiento notificada el 6 de junio de 2000, mucho antes de la interposición de la demanda contra tercero por parte del E.L.A. cuatro años después.

El Tribunal desestimó la reclamación del E.L.A. contra el Dr. Fourquet y contra la esposa de éste.

Finalmente, mediante una tercera sentencia sumaria parcial emitida ese mismo día, 10 de junio de 2005, el Tribunal de Primera Instancia también desestimó la demanda contra tercero presentada por el E.L.A. contra las compañías de seguros del Dr. Fourquet, la Dra. Villafañe y de Ponce Pediatrics.

En su sentencia, el Tribunal determinó que, como se había determinado que la acción del E.L.A. contra los asegurados resultaba improcedente, también debía desestimarse la demanda contra las compañías de seguro, puesto que la responsabilidad de dichas entidades era contingente a la responsabilidad de sus asegurados. Este argumento, según hemos visto, resultaba inaplicable contra Triple S, aseguradora de Ponce Pediatrics, puesto que el Tribunal nunca adjudicó la responsabilidad de dicha parte.

El Tribunal también entendió que debía desestimarse la demanda contra las aseguradoras, puesto que éstas aún no habían sido emplazadas.

Insatisfecho con las tres sentencias parciales mencionadas, el E.L.A. acudió ante este Tribunal.

## II

En su recurso, el E.L.A. plantea que el Tribunal de Primera Instancia erró al emitir los tres dictámenes recurridos y al desestimar su demanda contra tercero contra la Dra. Villafañe, el Dr. Fourquet y contra las compañías aseguradoras de éstos y de Ponce Pediatrics.

Discutimos por separado la responsabilidad de cada una de estas partes:

### I. La Demanda Contra Tercero Contra la Dra. Villafañe.

La Regla 10.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 10.2, autoriza a una parte a solicitar la desestimación, de su faz, de una demanda, cuando, entre otros fundamentos, la misma deja de exponer una reclamación que justifique la concesión de un remedio.

El Tribunal Supremo de Puerto Rico ha advertido que este tipo de desestimación procede cuando de un examen de las alegaciones se desprenda que la parte demandante no tiene derecho a remedio alguno. *Roldán v. Lutrón, S.M. Inc.*, 151 D.P.R. 883, 890 (2000); *Dorante v. Wrangler of P.R.*, 145 D.P.R. 408, 414 (1998); *Agosto v. Mun. de Río Grande*, 143 D.P.R. 174, 178 (1997); *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 D. P.R. 497, 505 (1994).

Al adjudicar una moción de desestimación, el juzgador viene obligado a dar por ciertas todas las alegaciones bien hechas de la demanda e interpretarlas de la forma más favorable a la parte demandante. *Álamo v. Supermercados Grande, Inc.*, 158 D.P.R. ___ (2002), **2002 J.T.S. 124**, a la pág. 181; *Roldán v. Lutrón, S.M. Inc.*, 151 D.P.R. a la pág. 889; *Harguindey Ferrer v. U.I.*, 148 D.P.R. 13, 30 (1999); *Dorante v. Wrangler of P. R.*, 145 D.P.R. a las págs. 413-414.

Cuando, como en el presente caso, una moción de desestimación incluye materias no contenidas en la demanda, la Regla 10.2 establece que debe ser considerada como una moción de sentencia sumaria y tramitada de conformidad. Véanse, *Sánchez v. Aut. de los Puertos*, 153 D.P.R. 559, 570 (2001); *Luán Invest. Corp. v. Rexach Const. Co.*, 152 D.P.R. 652, 664-665 (2000), **2000 J.T.S. 196**, a la pág. 552; *Torres Capeles v. Rivera Alejandro*, 143 D.P.R. 300, 309 (1997).

La Regla 36.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.3, en este sentido, autoriza al tribunal a dictar sentencia sumaria cuando *"no existe controversia real sustancial en cuanto a ningún hecho material y ... como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente."* Véase, en general, *Vera et al. v. Dr. Bravo et als.*, 161 D.P.R. ___ (2004), **2004 J.T.S. 40**, a la pág. 744; *P.A.C. v. E.L.A. I*, 150 D.P.R. 359, 374 (2000); *Piñero v. A.A.A.*, 146 D.P.R. 890, 904 (1998); *Soc. de Gananciales v. Vélez & Asoc.*, 145 D.P.R. 508, 526 (1998); *Soto v. Rivera*, 144 D.P.R. 500, 518 (1997); *Tello, Rivera v. Eastern Airlines*, 119 D.P.R. 83, 86 (1987); *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714, 720 (1986).

El propósito principal de este mecanismo es propiciar la resolución justa, rápida y económica de litigios que no presentan controversias genuinas de hechos materiales, por lo que no se justifica la celebración de un juicio en su fondo. Utilizado correctamente, este vehículo procesal contribuye a descongestionar los calendarios judiciales. *P.A.C. v. E.L.A. I*, 150 D.P.R. a la pág. 374; *López v. J. Gus Lallande*, 144 D.P.R. 774, 783 (1998); *Neca Mortg. Corp. v. A&W Dev. S.E.*, 137 D.P.R. 860, 869 (1995).

La sentencia sumaria procede en casos claros cuando el Tribunal tiene ante sí la verdad sobre los hechos pertinentes y no hace falta una vista evidenciaria. *Rivera v. Depto. de Hacienda*, 149 D.P.R. 141, 154-155 (1999); *J.A.D.M. v. Centro Com. Plaza Carolina*, 132 D.P.R. 785, 802 (1993).

No obstante, si existen dudas sobre la procedencia de la sentencia sumaria, el Tribunal debe brindar a las partes la oportunidad de una vista evidenciaria. Véanse, *S.L.G. v. S.L.G.*, 150 D.P.R. 171, 193 (2000); *Rivera v. Depto. de Hacienda*, 149 D.P.R. a la pág. 158; *Bonilla Medina v. P.N.P.*, 140 D.P.R. 294, 304 (1996); *Rivera et al. v. Superior Pkg., Inc., et al.*, 132 D.P.R. 115, 133 (1992).

La determinación de disponer de un pleito mediante este mecanismo es una que está confiada a la discreción del foro de primera instancia. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. 881, 914 (1994).

Al hacer su evaluación, el Tribunal puede considerar la totalidad de las alegaciones y documentos que obren en el récord, los cuales se toman de manera favorable a la parte promovida. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. a la pág. 913; *Corp. Presiding Bishop of LDS v. Purcell*, 117 D.P.R. a las págs. 721-723; *Flores v. Municipio de Caguas*, 114 D.P.R. 521, 525 (1983); *Padín v. Rossi*, 100 D.P.R. 259, 263-264 (1971).

El peso para demostrar que no existe controversia real sustancial sobre los hechos materiales recae inicialmente sobre la parte que solicita la sentencia sumaria. La parte opositora se ve entonces en posición de poner en controversia los hechos presentados por el promovente. *Soto v. Rivera*, 144 D.P.R. 500, 518 (1997); *Pilot Life Ins. Co. v. Crespo Martínez*, 136 D.P.R. 624, 632 (1994).

Una vez la moción de sentencia sumaria ha sido presentada y se sostenga en la forma provista por la Regla 36 de las de Procedimiento Civil, la parte contraria no puede descansar solamente en las aseveraciones o negaciones contenidas en su demanda, sino que viene obligada a contestar en forma tan detallada y específica, como lo hubiere hecho la parte promovente, exponiendo los hechos pertinentes a la controversia que demuestren que existe una controversia real que debe ser dilucidada en un juicio. Si no lo hace, debe emitirse sentencia sumaria en su contra. *Audiovisual Lang. v. Sist. Est. Natal Hnos.*, 144 D.P.R. 563, 576 (1997); *Pilot Life Insurance Company v. Crespo Martínez*, 136 D.P.R. a la pág. 633.

En el presente caso, según hemos visto, se trata de una demanda por daños y perjuicios por impericia de la medicina presentada contra el E.L.A. y otras partes por la alegada negligencia en el tratamiento de la demandante Ilia Figueroa Morales. El E.L.A. por su parte, ha presentado una demanda contra tercero contra la Dra. Villafañe, el Dr. Fourquet, Ponce Pediatrics y las compañías aseguradoras de éstos, alegando que le responden directamente a los demandantes por sus daños.

Este tipo de reclamaciones está gobernada por el Artículo 1802 del Código Civil, 31 L.P.R.A. sec. 5141. Se requiere establecer la existencia de: (1) un daño, (2) una acción u omisión negligente, y (3) la relación causal entre el daño y la conducta culposa o negligente. *García, Pacheco v. E.L.A.*, 163 D.P.R. ___, **2005 J.T.S. 18**, a la pág. 731; *Pons y otros v. Engebretson y otros*, 160 D.P.R. ___ (2003), **2003 J.T.S. 151**, a la pág. 229; *Montalvo v. Cruz*, 144 D.P.R. 748, 755 (1998); *Toro Aponte v. E.L.A.*, 142 D.P.R. 464, 473 (1997); *Elba A.B.M. v. U.P.R.*, 125 D.P.R. 294, 308 (1990).

En otras palabras, se requiere que la persona demandada hubiera incurrido en alguna actuación u omisión

que hubiera provocado los daños. Para determinar si una omisión es generadora de responsabilidad, se considera: (1) la existencia o inexistencia de un deber jurídico de actuar por parte del alegado causante del daño, y (2) si de haberse llevado a cabo el acto omitido, el daño se hubiera evitado. *Toro Aponte v. E.L.A.,* 142 D.P.R. a la pág. 474.

Si el daño se debe a la conducta de más de una persona, todos responden ante el perjudicado. Dichos cocausantes del daño son responsables solidariamente frente al perjudicado, sin perjuicio de que en la relación interna entre ellos la obligación se divida de acuerdo a la proporción en que la culpa o negligencia de cada uno contribuyó a la ocurrencia del daño. *Torres Ortiz v. E.L.A.,* 136 D.P.R. 556, 564-565 (1994); *Sánchez Rodríguez v. López Jiménez,* 118 D.P.R. 701, 705-706 n. 2 (1987); *Ramos v. Caparra Dairy, Inc.,* 116 D.P.R. 60, 62-64 (1985).

Cuando se trata de una demanda por impericia contra un profesional de la salud, el Tribunal Supremo ha establecido que éstos responden cuando han omitido cumplir las normas mínimas de cuidado, conocimiento y destrezas que un profesional razonable hubiera brindado a sus pacientes, conforme al estado de conocimiento y práctica prevaleciente, satisfaciendo las exigencias generalmente reconocidas por su profesión, a la luz de los modernos medios de comunicación y enseñanza. *Lebrón Correa v. Díaz Troche,* 165 D.P.R. ___ (2005), **2005 J.T.S. 135**, a la pág. 177; *Arrieta y Otros v. De la Vega y Otros,* 165 D.P.R. ___ (2005), **2005 J.T.S. 134**, a la pág. 168; *López y otros v. Dr. Cañizares,* 162 D.P.R. ___ (2004), **2004 J.T.S. 165**, a la pág. 298; *Castro Ortiz v. Mun. de Carolina,* 134 D.P.R. 783, 793 (1994); *Medina Santiago v. Vélez,* 120 D.P.R. 380, 384-385 (1988); *Zambrana v. Hospital Santo Asilo de Damas,* 109 D.P.R. 517, 521-522 (1980); *Oliveros v. Abréu,* 101 D.P.R. 209, 226 (1973); véase, además, *Colón Prieto v. Géigel,* 115 D.P.R. 232, 239-240 (1984).

Para establecer un caso *prima facie* contra un profesional de la salud, el demandante viene obligado a: (1) presentar prueba sobre las normas mínimas de conocimiento y cuidado aplicables al área en cuestión, (2) demostrar que el demandado incumplió con estas normas en el tratamiento del paciente, y (3) que esto fue la causa del daño sufrido por el paciente. Véanse, *Lebrón Correa v. Díaz Troche,* **2005 J.T.S. 135**, a la pág. 177; *Blás v. Hosp. Guadalupe,* 146 D.P.R. 267, 322 (1998); *Santiago Otero v. Méndez,* 135 D.P.R. 540, 549 (1994); *Rodríguez Crespo v. Hernández,* 121 D.P.R. 639, 650 (1988); *Medina Santiago v. Vélez,* 120 D.P.R. 380, 385 (1988); *Matos v. Adm. Serv. Médicos de P.R.,* 118 D.P.R. 567, 569 (1987).

De ordinario, esto debe establecerse mediante testimonio pericial. Véanse, *Ríos Ruiz v. Mark,* 119 D.P.R. 816, 828-829 (1987); *Reyes v. Phoenix Assurance Co.,* 100 D.P.R. 871, 877 (1972); *Guzmán v. Silén,* 86 D.P.R. 532, 538 (1962).

Existe una presunción de que el tratamiento brindado a un paciente ha sido adecuado. La responsabilidad del demandado no puede fundarse en meras especulaciones o conjeturas. Véanse, *Arrieta y Otros v. De la Vega y Otros,* **2005 J.T.S. 134**, a la pág. 168; *Blás v. Hosp. Guadalupe,* 146 D.P.R. a la pág. 322; *Ramos, Escobales v. García, González,* 134 D.P.R. 969, 976 (1993); *Rodríguez Crespo v. Hernández,* 121 D.P.R. a la pág. 650; *Vda. de López v. E.L.A.,* 104 D.P.R. 178, 183 (1975).

Los hospitales, por su parte, deben a sus pacientes aquel grado de cuidado que ejercería un hombre prudente y razonable en condiciones y circunstancias similares. *López y otros v. Dr. Cañizares,* **2004 J.T.S. 165**, a la pág. 298; *Blas v. Hosp. Guadalupe,* 146 D.P.R. 267, 323 (1998); *Márquez Vega v. Martínez Rosado,* 116 D.P.R. 397, 405 (1985); *Núñez v. Cintrón,* 115 D.P.R. 598, 613 (1984); *Crespo v. H.R. Psychiatric Hosp.,* 114 D.P.R. 796, 800 (1983); *Hernández v. La Capital,* 81 D.P.R. 1031, 1037-38 (1970).

No se favorece la imposición de responsabilidad vicaria en estos casos, cuando el causante del daño no es empleado del demandado. Véase, *Márquez Vega v. Martínez Rosado,* 116 D.P.R. a la pág. 405.

El principio, según hemos indicado, es que para imponerse responsabilidad personal a un demandado, debe establecerse que dicha parte incurrió en una alguna actuación u omisión negligente. *Arrieta y Otros v. De la Vega y Otros*, **2005 J.T.S. 134**, a las págs. 168-169. El Tribunal Supremo de Puerto Rico ha aclarado, en este sentido, que la obligación de responder por otro está limitada, en casos de daños y perjuicios extracontractuales, a aquellas circunstancias expresamente enumeradas por la Ley. *Torres Pérez v. Medina Torres*, 113 D.P.R. 72, 76 (1982).

En el caso de autos, no existe controversia real sustancial entre las partes en torno a que la Dra. Villafañe no intervino directamente en el tratamiento de la demandante ni de la hija recién nacida de ésta. La Dra. Villafañe presentó, además, una declaración jurada en la que explicaba que ella no atendía pacientes, ni tenía la responsabilidad de supervisar a los residentes de Pediatría, sino que sus funciones eran más bien de carácter administrativo, consistentes en coordinar los distintos componentes de dicho Departamento. El E.L.A. no ha intentado controvertir dicha declaración.

En estas circunstancias, somos de la opinión de que el Tribunal de Primera Instancia no erró al desestimar la demanda contra la Dra. Villafañe.

En su carácter de empleada de Ponce Pediatrics, la Dra. Villafañe no responde vicariamente por los actos u omisiones de los otros médicos empleados por dicha corporación.

El E.L.A. alega que la Dra. Villafañe responde por su propia negligencia porque omitió supervisar de forma adecuada a los doctores del Departamento de Pediatría. Consideramos que esto no es sino otra forma de imputar a la Dra. Villafañe responsabilidad por los actos negligentes de otros empleados. No existe base para aseverar que la Dra. Villafañe hubiera incurrido en omisión específica alguna que hubiera tenido el efecto de provocar los daños sufridos por los demandantes.

La Dra. Villafañe no atendía pacientes ni era responsable de la supervisión de los residentes del Departamento de Pediatría. La contención del E.L.A. parece ser más bien que la Dra. Villafañe responde por los daños porque ella era la encargada de verificar que los médicos del Departamento de Pediatría cumplieran con las normas del Hospital y no incurrieran en actos negligentes.

Reconocemos que la postura asumida por el E.L.A. está sostenida por algunas decisiones del Tribunal Supremo de Puerto Rico emitidas en el contexto de demandas contra el Estado, por actuaciones negligentes de agentes del Orden Público, donde se ha impuesto responsabilidad al gobierno por la negligencia de un supervisor al no prevenir conducta culposa de sus subordinados. Véase, por ejemplo, *Leyva et al. v. Aristud et al.*, 132 D.P.R. 489, 510 (1993); *Hernández v. E.L.A.*, 116 D.P.R. 293, 296-297 (1985); *Negrón v. Orozco Rivera*, 113 D.P.R. 712, 716-717 (1983).

La relativa liberalidad hacia los demandantes exhibida en dichos casos por el Tribunal Supremo de Puerto Rico es tal vez atribuible a la necesidad de atenuar el rigor de la Ley de Pleitos contra el Estado, la que de otro modo no permite la presentación de demandas por daños contra el gobierno basadas en conducta intencional, 32 L.P.R.A. sec. 3081, y de proveer un remedio a aquellas personas que hubieran sido víctimas de actuaciones de esta naturaleza por parte de los agentes del Orden Público y que hubieran sufrido daños, en circunstancias que no resultan claras.

La tendencia observada por el Tribunal Supremo en estos casos ha sido la de reconocer que los ciudadanos pueden contar con una causa de acción contra el E.L.A., siempre que la conducta de los agentes hubiera estado conectada de algún modo con sus funciones y no hubiere respondido a motivaciones puramente privadas. *Leyva et al. v. Aristud et al.*, 132 D.P.R. a las págs. 510-511; *Morales Garay v. Roldán Coss*, 110 D.P.R. 701, 705 (1981); *Galarza Soto v. E.L.A.*, 109 D.P.R. 179, 182 (1979); *Hernández v. Fonseca*, 96 D.P.R. 715, 719 (1968);

*Vda. de Valentín v. E.L.A.,* 84 D.P.R. 112, 119 (1961).

No pensamos que dichas consideraciones apliquen al caso de autos. En el presente caso, se trata de una reclamación en la que se persigue la imposición de responsabilidad personal a la Dra. Villafañe por actos cometidos por otros empleados de Ponce Pediatrics, en los que la Dra. Villafañe no tuvo intervención alguna.

De admitirse este tipo de reclamación, se trastocaría la naturaleza de la responsabilidad vicaria en nuestra jurisdicción para alcanzar a empleados que, a diferencia de sus patronos, no siempre tienen control sobre la selección y la contratación de aquellos por cuyos actos y omisiones podrían venir llamados a responder.

En el presente caso, los encargados del Departamento de Pediatría del Hospital eran empleados de Ponce Pediatrics. Es a dicha empresa, y no a la Dra. Villafañe, la que corresponde responder vicariamente por los actos de sus empleados. Aunque la Dra. Villafañe era oficial de la corporación, debe respetarse la identidad separada de dicho ente jurídico. No se ha alegado circunstancia alguna, en este sentido, que ameritaría descorrer el velo corporativo. *D.A.C.O. v. Alturas Fl. Dev. Corp. y otro,* 132 D.P.R. 905, 925 (1993); *Fleming v. Toa Alta Develop. Corp.,* 96 D.P.R. 240, 244 (1968); *San Miguel Fertil. Corp. v. P.R. Drydock,* 94 D.P.R. 424, 430 (1967); *Sucn. Pérez v. Gual,* 76 D.P.R. 959, 963 (1954).

Concluimos que debe confirmarse la sentencia sumaria parcial emitida por el Tribunal de Primera Instancia, que desestimó la demanda contra la Dra. Villafañe.

## II. La Demanda Contra Tercero Contra el Dr. Fourquet.

El E.L.A. también se queja de que el Tribunal de Primera Instancia desestimara su demanda contra tercero contra el Dr. Fourquet.

La Regla 12.1 de las de Procedimiento Civil establece, en lo pertinente, que: *"[e]n cualquier momento después de comenzado el pleito, el demandado podrá, como demandante contra tercero, notificar un emplazamiento y demanda a una persona que no sea parte en el pleito y (1) que le sea o pueda serle responsable al demandado por toda o parte de la reclamación del demandante, o (2) que sea o pueda serle responsable exclusivamente al demandante."* 32 L.P.R.A. Ap. III, R. 12.1.

La Regla también permite que un tercero demandado proceda, utilizando el mismo mecanismo, *"contra cualquier persona que no sea parte en el pleito y que le sea o pueda serle responsable a él, al demandante o al demandante contra tercero por la totalidad o parte de la reclamación hecha en el pleito contra el tercero demandado."*

El propósito de este precepto es establecer un mecanismo para facilitar la resolución pronta y económica de controversias múltiples que puedan surgir de los mismos hechos. *S.L.G. Szendrey v. Hospicare, Inc.,* 158 D.P.R. ___ (2003), **2003 J.T.S. 25**, a la pág. 586; *Gen. Accid. Ins. Co. P.R. v. Ramos,* 148 D.P.R. 523, 534 (1999); *Colón v. Coop. de Seguros Múltiples de P.R.,* 111 D.P.R. 568, 571 (1981).

La reclamación contra el tercero procede cuando la responsabilidad de dicho tercero depende en alguna forma del resultado de la acción principal o cuando el tercero le es secundaria o directamente responsable al demandante. *Gen. Accid. Ins. Co. P.R. v. Ramos,* 148 D.P.R. a la pág. 534; *Camaleglo v. Dorado Wings, Inc.,* 118 D.P.R. 20, 30 (1986).

La Regla no requiere, como tal, el permiso del Tribunal para la presentación de una demanda contra tercero ni establece un término para dicho trámite. Esto no significa, sin embargo, que el tribunal *"no tenga discreción para negarse a permitir la demanda contra tercero y que el demandado no tenga que actuar con diligencia en*

*la presentación de sus alegaciones contra terceros.*" 118 D.P.R. a la pág. 29.

El Tribunal Supremo de Puerto Rico ha aclarado que al autorizar este tipo de trámite:

"*el tribunal debe balancear los beneficios de economía procesal que se derivan al ventilar todas las controversias que emanen de una misma situación de hecho o relación de derecho en un solo pleito, ante un juez compenetrado con el caso, contra la falta de diligencia y los perjuicios que la tardanza al presentar la demanda contra tercero le puedan ocasionar al demandante o al tercero demandado. Esta evaluación requiere, además, tomar en consideración los méritos de la demanda contra tercero y la Regla 38.2 que permite [el juicio separado de cualquier demanda contra tercero]... El tribunal puede negarse a permitir la demanda contra tercero cuando se convenza de que el demandado ha incurrido en una crasa falta de diligencia o que los perjuicios que causaría son insalvables y sobrepasan los beneficios que se derivarían al permitirla a pesar de todas las medidas que se puedan tomar.*"

*Camaleglo v. Dorado Wings, Inc.,* 118 D.P.R. a las págs. 29-30.

Al determinar si se permite una enmienda a las alegaciones, el Tribunal Supremo de Puerto Rico también ha indicado que debe considerarse el momento en que se solicita, su impacto para la pronta adjudicación de la cuestión litigiosa, la razón o ausencia de ella para la demora e inacción original, el perjuicio que conllevaría para la otra parte y sus méritos intrínsecos. *S.L.G. Sierra-Dávila v. Rodríguez,* 163 D.P.R. ___, **2005 J.T.S. 21**, a la pág. 748; *Álamo Pérez v. Supermercados Grande,* 158 D.P.R. ___ (2002), **2002 J.T.S. 124**, a la pág. 182; *Ortiz Díaz v. R & R Motor Sales Corp.,* 131 D.P.R. 829, 836-837 (1992); *Epifanio Vidal, Inc. v. Suro,* 103 D.P.R. 793, 796 (1976); *Torres Cruz v. Municipio de San Juan,* 103 D.P.R. 217, 220 (1975).

En el presente caso, según hemos visto, el E.L.A. instó su demanda contra el Dr. Fourquet casi 4 años después-de-que la parte demandante hubiera desistido su reclamación contra dicha parte. El Tribunal de Primera Instancia concluyó que la demanda contra tercero del E.L.A. estaba prescrita.

El término prescriptivo aplicable a las reclamaciones por daños y perjuicios por impericia médica es el de un año establecido por el art. 1868 del Código Civil, el que se computa "*desde que lo supo el agraviado*", 31 L.P.R.A. sec. 5298. *Vera et al. v. Dr. Bravo, et als.,* 161 D.P.R. ___ (2004), **2004 J.T.S. 40**, a la pág. 740; *Tenorio y otros v. Hosp. Dr. Pila,* 159 D.P.R. ___ (2003), **2003 J.T.S. 113**, a la pág. 1,188; *Montañez v. Hosp. Metropolitano,* 157 D.P.R. ___ (2002), **2002 J.T.S. 80,** a la pág. 1226; *Santiago v. Ríos Alonso,* 156 D.P.R. ___ (2002), **2002 J.T.S. 21**, a la pág. 714; *Sánchez v. Aut. de los Puertos,* 153 D.P.R. a la pág. 567; *Padín v. Cía. Fom. Ind.,* 150 D.P.R. 403, 411 (2000); *Martínez v. Bristol Myers, Inc.,* 147 D.P.R. 383, 405 (1999).

Ahora bien, conforme al art. 1873 del Código Civil, la prescripción de las acciones puede ser interrumpida, entre otras circunstancias, por la reclamación del acreedor. 31 L.P.R.A. sec. 5303.

En *Arroyo v. Hospital La Concepción,* 130 D.P.R. 596 (1992), el Tribunal Supremo de Puerto Rico aclaró que la presentación oportuna de una demanda de daños y perjuicios tiene el efecto de interrumpir el plazo prescriptivo en cuanto a cualquier co-causante solidario de los daños, conforme a los dispuesto por el art. 1874 del Código Civil, 31 L.P.R.A. sec. 5304. El Tribunal expresó que:

"*[L]a doctrina de la solidaridad ... permite traer a juicio instado a tiempo, a un [cocausante] solidario que originalmente no fue inclu[i]do en el pleito ... a través de la demanda contra tercero por parte del demandado origina[l o] por enmienda a la demanda por parte del demandante ... [S]ólo se requiere alegar bien y suficientemente en la demanda el hecho de que el nuevo demandado, o tercero demandado, según los casos, responde solidariamente por los daños reclamados con el demandado original, contra quien se radicó la demanda dentro del término prescriptivo dispuesto por el ordenamiento...*".

130 D.P.R. a las págs. 607-608 (citando a H.M. Brau, *El Término Prescriptivo y su Interrrupción en Acciones en Daños por Responsabilidad Extracontractual Solidaria en el Derecho Puertorriqueño*, 44 Rev. C. Abog. P. R. 203, 243 (1983)); véanse, además, *Sánchez v. Aut. de los Puertos*, 153 D.P.R. a la pág. 567; *Rivera Otero v. Casco Sales Co.*, 115 D.P.R. 662, 667 (1984); *García v. Gobierno de la Capital*, 72 D.P.R. 138, 148-149 (1951).

En el presente caso, el E.L.A. alegó en su demanda contra tercero que el Dr. Fourquet había contribuido a la producción de los daños sufridos por la parte demandante. Entendemos que las alegaciones de la reclamación presentada por el E.L.A. permitían al Tribunal concluir que se trataba de un co-causante solidario. En estas circunstancias, la presentación de la demanda original contra los otros co-demandados interrumpía el plazo prescriptivo en cuanto al Dr. Fourquet. *Arroyo v. Hospital La Concepción*, 130 D.P.R. a las págs. 607-608; *Sánchez v. Aut. de los Puertos*, 153 D.P.R. a las págs. 573-574; *Rivera Otero v. Casco Sales Co.*, 115 D.P.R. a la pág. 667; *García v. Gobierno de la Capital*, 72 D.P.R. a las págs. 148-149.

El Tribunal de Primera Instancia entendió, sin embargo, que habiendo incluido los demandantes al Dr. Fourquet en su demanda original y habiendo posteriormente desistido de dicha reclamación el 1ro de junio de 2000, lo anterior *"rompe la solidaridad entre ese demandado desistido y los demás codeudores solidarios, por lo que los demás codeudores no pueden invocar la solidaridad como base de la interrupción indefinida de la prescripción en cuanto a una acción eventual contra aquél."*

El Dr. Fourquet también planteó ante el Tribunal de Primera Instancia que la sentencia parcial de desistimiento emitida el 1ro de junio de 2000 constituia cosa juzgada y servía de impedimento para que se le incluyera nuevamente en el litigio.

Lo cierto es, sin embargo, que en su sentencia, el Tribunal de Primera Instancia no dispuso que el desistimiento fuera con perjuicio por lo que, conforme a la Regla 39.1 de las de Procedimiento Civil, se entiende que el mismo es sin perjuicio. 32 L.P.R.A. Ap. III, R. 39.1; *Silva Wiscovich v. Weber Dental Mfg. Co.*, 119 D.P.R. 550, 562 (1987).

Tampoco surge que el desistimiento hubiera respondido a alguna transacción mediante la cual los demandantes hubieran renunciado a que se les compensara por la proporción de los daños atribuibles a las actuaciones de dicha parte. *S.L.G. Szendrey v. Hospicare, Inc.*, **2003 J.T.S. 25**, a la pág. 587.

Toda vez que la reclamación contra los otros alegados cocausantes del daño fue presentada de manera oportuna e interrumpía el término prescriptivo contra el Dr. Fourquet y que la sentencia de desistimiento emitida por el Tribunal en cuanto a dicha parte fue sin perjuicio, somos de la opinión que la reclamación del E. L.A. contra dicha parte no está prescrita.

Cabe señalar que, en su demanda contra tercero, el E.L.A. reclamó que el Dr. Fourquet debía responderle por cualquier suma que el E.L.A. viniese obligado a pagar a los demandantes. Ello es consistente con lo dispuesto por el Artículo 1098 del Código Civil, el cual permite a un codeudor solidario que ha pagado la totalidad de una obligación *"reclamar de sus codeudores la parte que a cada uno corresponda, con los intereses del anticipo"*. 31 L.P.R.A. sec. 3109.

El Tribunal Supremo de Puerto Rico también ha reconocido que cuando un deudor solidario realiza un pago en proporción mayor a la responsabilidad que le corresponde, éste goza de un derecho a reclamar contribución o nivelación de parte de los otros obligados. *Ramos v. Caparra Dairy, Inc.*, 116 D.P.R. 60, 63-64 (1985); *Security Ins. Co. v. Tribunal Superior*, 101 D.P.R. 191, 198 (1973); *García v. Gobierno de la Capital*, 72 D.P.R. a las páginas 147-148.

En rigor, este derecho no surge sino en el momento en que el deudor solidario hace el pago en exceso de su responsabilidad, si bien el Tribunal Supremo de Puerto Rico ha reconocido que el deudor puede incoar una reclamación contra sus codeudores antes de este momento, la cual será contingente al resultado de la demanda original. *Security Ins. Co. v. Tribunal Superior*, 101 D.P.R. a la pág. 198; *García v. Gobierno de la Capital*, 72 D.P.R. a la pág. 146.

El Tribunal Supremo de Puerto Rico ha reconocido que este tipo de reclamación puede ser presentada mediante el mecanismo de una demanda contra tercero. *S.L.G. Szendrey v. Hospicare, Inc.,* **2003 J.T.S. 25**, a las págs. 586-587.

En el presente caso, la reclamación instada por el E.L.A. contra el Dr. Fourquet persigue precisamente que dicha parte le responda al E.L.A. por cualquier suma que el E.L.A. tuviera que pagar a los demandantes como resultado de las actuaciones del Dr. Fourquet.

Toda vez que el derecho de nivelación del E.L.A. contra el Dr. Fourquet resulta contingente a que los demandantes prevalezcan en su demanda contra el E.L.A., entendemos que no puede concluirse, en esta etapa, que la reclamación del E.L.A. contra el Dr. Fourquet esté prescrita.

Ahora bien, lo anterior no implica que el Tribunal de Primera Instancia hubiera errado al no permitir la demanda contra tercero instada por el E.L.A. contra el Dr. Fourquet.

El Tribunal, según hemos visto, puede negarse a permitir una demanda contra tercero cuando concluye que el demandado ha incurrido en una *"crasa falta de diligencia"* o que los perjuicios que se causarían *"son insalvables y sobrepasan los beneficios que se derivarían"* al permitir dicha reclamación. *Camaleglo v. Dorado Wings, Inc.,* 118 D.P.R. a las págs. 29-30; cf., *Álamo Pérez v. Supermercados Grande,* **2002 J.T.S. 124**, a la pág. 182; *Vidal, Inc. v. Suro*, 103 D.P.R. a la pág. 796.

En el presente caso, según hemos visto, aunque el E.L.A. ya estaba presente en el litigio, no se opuso a que los demandantes desistieran de su reclamación contra el Dr. Fourquet. El E.L.A. tampoco hizo gestión alguna por casi cuatro años para expresar su interés de ventilar su reclamación contra dicha parte.

Esta situación provocó que los procedimientos del caso continuaran en ausencia de dicha parte, incluyendo el descubrimiento de prueba, sin que el Dr. Fourquet hubiera tenido la oportunidad de conocer de lo anterior y de tomar medidas para proteger sus derechos. La inacción del E.L.A. creó la apariencia de que no se habría de reclamar al Dr. Fourquet dentro del procedimiento de autos. Somos de la opinión de que el Dr. Fourquet tiene derecho a descansar en dicha apariencia.

Aunque la reclamación del E.L.A. contra dicha parte no está, como tal, prescrita, somos de la opinión de que no debe permitirse que el E.L.A. incluya al Dr. Fourquet como tercero demandado en el caso en esta etapa, si éste no consiente a lo anterior. El E.L.A. ha obrado con incuria, en el trámite de su reclamación, lo que le impide actuar de manera inconsistente con el estado de derecho que ha contribuido a crear. *IM Winner, Inc. v. Mun. de Guayanilla*, 151 D.P.R. 30 (2000); *Colón Torres v. A.A.A.,* 143 D.P.R. 116, 124 (1997); *Pueblo v. Valentín*, 135 D.P.R. 245, 255-256 (1994); *Aponte v. Srio. de Hacienda*, 125 D.P.R. 610, 618 (1990); *Torres Arzola v. Policía de P.R.,* 117 D.P.R. 204, 209 (1986); *Pueblo v. Tribunal Superior*, 81 D.P.R. 904, 912 (1960).

Lo anterior no significa que el E.L.A. no pueda presentar una posterior acción de nivelación contra el Dr. Fourquet, de producirse un fallo adverso que lo condene a pagar a los demandantes por la negligencia de dicho galeno.

Pero habiendo optado por no ejercitar dicha reclamación dentro del presente litigio por casi cuatro años, a

pesar de haber tenido la oportunidad de hacerlo, entendemos irrazonable su pretensión de que se le permita presentar una demanda contra tercero en esta etapa, para reclamar al Dr. Fourquet por su negligencia.

El E.L.A., en este sentido, no ha intentado justificar su dilación en instar su reclamación. Habiendo contratado con Ponce Pediatrics, es evidente que el E.L.A. tenía suficiente información para conocer que, bajo los términos del acuerdo, dicha entidad y sus funcionarios respondían al E.L.A. por los daños producidos por sus actos negligentes.

Entendemos que el Tribunal de Primera Instancia no erró al negarse a admitir la demanda contra tercero instada por el E.L.A. contra el Dr. Fourquet, si bien dicho dictamen debe ser modificado para aclarar que dicha reclamación no está prescrita y que la determinación del Tribunal es sin perjuicio de que el E.L.A. pueda posteriormente reclamar nivelación del Dr. Fourquet en un procedimiento separado.

## III. La Demanda Contra Tercero Contra las Aseguradoras.

El E.L.A. también plantea que el Tribunal de Primera Instancia erró al desestimar su reclamación contra las compañías aseguradoras de los terceros demandados.

El Tribunal, según hemos visto, entendió que las reclamaciones contra las compañías aseguradoras eran más bien contingentes a las presentadas por el E.L.A. contra sus asegurados. Habiendo desestimado la demanda contra la Dra. Villafañe y el Dr. Fourquet, el Tribunal entendió que debía desestimarse, además, las demandas contra sus compañías aseguradoras. Toda vez que hemos modificado el dictamen del Tribunal para aclarar que la denegatoria de acoger la demanda contra tercero contra el Dr. Fourquet no constituye una adjudicación en sus méritos, procede enmendar similarmente la sentencia en cuanto a la aseguradora de éste, S.I.M.E.D., en iguales términos.

El Tribunal desestimó, además, la demanda contra la aseguradora de Ponce Pediatrics, Triple S. Al momento de su sentencia parcial, no surge que el Tribunal hubiera adjudicado la reclamación del E.L.A. contra Ponce Pediatrics, por lo que no existía fundamento para lo anterior.

Si bien la responsabilidad de las compañías aseguradoras está sujeta a los términos y condiciones de sus pólizas, procesalmente el E.L.A. podía reclamar directamente contra éstas. *Ruiz v. New York Dept. Stores*, 146 D.P.R. 353, 365 (1998); *Cortés Román v. E.L.A.,* 106 D.P.R. 504, 515-516 (1977); *García v. Northern Assurance Co.,* 92 D.P.R. 245, 254 (1965); *Trigo v. The Travelers Ins. Co.,* 91 D.P.R. 868, 873 (1965). Véase, además, 26 L.P.R.A. sec. 2003.

El Tribunal Supremo de Puerto Rico ha reconocido, en este sentido, que la acción de un perjudicado contra la compañía de seguros del causante de sus daños es independiente, distinta y separada de su acción por los mismos hechos contra el referido causante. *Ruiz v. New York Dept. Stores,* 146 D.P.R. a la pág. 366; *Trigo v. The Travelers Ins. Co.,* 91 D.P.R. a las págs. 874-875.

En el presente caso, el Tribunal de Primera Instancia entendió que las reclamaciones contra las compañías de seguro debían de ser desestimadas, debido a que el E.L.A. no había emplazado a dichas partes.

El E.L.A., sin embargo, no incluyó expresamente a Triple S como demandada en el pleito sino hasta el 27 de enero de 2005. En ese momento, el Tribunal de Primera Instancia se negó a expedir el emplazamiento contra dicha parte, lo que el foro recurrido omitió hacer, a pesar de los reclamos repetidos del E.L.A.

Tampoco estamos persuadidos de que el Tribunal hubiera actuado correctamente al desestimar la reclamación contra las compañías de seguro debido a que el E.L.A. no las había emplazado oportunamente.

El término para diligenciar el emplazamiento está gobernado por la Regla 4.3(b) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 4.3(b), que dispone:

*"El emplazamiento será diligenciado en el término de seis (6) meses de haber sido expedido. Dicho término solo podrá ser prorrogado por un término razonable a discreción del tribunal si el demandante demuestra justa causa para la concesión de la prórroga y solicita la misma dentro del término original. Transcurrido el término original o su prórroga sin que el emplazamiento hubiere sido diligenciado, se tendrá a la parte actora por desistida, con perjuicio."*

El Tribunal Supremo de Puerto Rico ha aclarado que el propósito de esta Regla es acelerar la litigación y despejar los calendarios. *Monell v. Mun. de Carolina*, 146 D.P.R. 20, 26 (1998); *Banco Metropolitano v. Berríos*, 110 D.P.R. 721, 724 (1981). La misma está relacionada a la Regla 39.2(b) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 39.2(b) sobre desestimación del pleito por inactividad. *Banco Metropolitano v. Berríos*, 110 D.P.R. a la pág. 724.

El término de seis meses para emplazar, de ordinario, debe ser computado desde la fecha de la presentación de la demanda, no desde la expedición de los emplazamientos por el Secretario. *Monell v. Mun. de Carolina*, 146 D.P.R. a la pág. 25.

No obstante, el Tribunal Supremo de Puerto Rico ha reconocido que la omisión de la Secretaría de emitir los emplazamientos de manera oportuna puede constituir justa causa para prorrogar el término. Véase, *Banco de Desarrollo Económico v. AMC Surgery*, 157 D.P.R. ___ (2002), **2002 J.T.S. 83**, a las págs. 1,239-40.

No se trata, sin embargo, de un plazo jurisdiccional ni tiene su expiración el efecto de la caducidad de la citación. *Banco Popular v. S.L.G. Negrón Toledo*, 164 D.P.R. ___ (2005), **2005 J.T.S. 84**, a la pág. 1,327; *Banco Metropolitano v. Berríos*, 110 D.P.R. a la pág. 725; véase, además, *Doral-Mortgage Corp. v. Gónzalez Sánchez*, 157 D.P.R. ___, **2003 J.T.S. 1**; *Rosado González v. Rivera Pérez*, 155 D.P.R. ___ (2001), **2001 J.T.S. 124**.

El Tribunal Supremo de Puerto Rico ha aclarado que el término en cuestión puede ser prorrogado por justa causa, aun luego de expirado el plazo original de seis meses, *López v. Porrata-Doria*, 140 D.P.R. 96, 102 (1996); *Pietri González v. Tribunal Superior*, 117 D.P.R. 638, 638 (1986); *Banco Metropolitano v. Berríos*, 110 D.P.R. a la pág. 724, si bien la misma, de ordinario, debe ser justificada por la parte solicitante; *Global Gas, Inv. v. Salaam Realty Corp.*, 164 D.P.R. ___ (2005), **2005 J.T.S. 48**, a la pág. 1,069; *Reyes v. E.L.A. et al.*, 155 D.P.R. ___ (2001), **2001 J.T.S. 171**, a la pág. 531; *Monell v. Mun. de Carolina*, 146 D.P.R. a la pág. 27; *First Bank of P.R. v. Inmob. Nac., Inc.*, 144 D.P.R. 901, 914 (1998); *Lugo v. Municipio de Bayamón*, 111 D.P.R. 679 (1981).

El término puede ser prorrogado cuando el Tribunal concluya que medió negligencia excusable por parte del demandante, bajo la Regla 68.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 68.2. *First Bank of P. R. v. Inmob. Nac., Inc.*, 144 D.P.R. a la pág. 914; *In re: Fernández Torres*, 122 D.P.R. 859, 860 (1988); *Ortalaza v. F.S.E.*, 116 D.P.R. 700, 703 (1985); *Banco Metropolitano v. Berríos*, 110 D.P.R. a la pág. 724.

Debe recordarse que la política en nuestra jurisdicción favorece que los casos sean ventilados en sus méritos. *Mun. de Arecibo v. Almac. Yakima*, 154 D.P.R. 217, 221 (2001); *Neptune Packing Corp. v. Wackenhut Corp*, 120 D.P.R. 283, 293 (1988); *Imp. Vilca, Inc. v. Hogares Crea, Inc.*, 118 D.P.R. 679, 686 (1987).

En el contexto de la Regla 39.2(b), el Tribunal Supremo de Puerto Rico ha señalado que la sanción extrema de la desestimación sólo debe ser impuesta cuando no haya duda de la falta de interés de la parte contra quien se toma la misma y se hayan agotado otras alternativas. Véanse, *Mun. de Arecibo v. Almac. Yakima*, 154 D.P.R. a

las págs. 222-223; *Echevarría Jiménez v. Sucn. Pérez Meri,* 123 D.P.R. 664, 674 (1989); *Dávila v. Hosp. San Miguel, Inc.,* 117 D.P.R. 807, 814 (1986); *Maldonado v. Secretario de Recursos Naturales*, 113 D.P.R. a la pág. 498; *Garriga Gordils v. Maldonado Colón,* 109 D.P.R. 817, 822 (1980); *Arce v. Club Gallístico de San Juan,* 105 D.P.R. 305, 308 (1976); véase, además, *Rosado González v. Rivera Pérez*, **2001 J.T.S. 124** (dejando sin efecto desestimación por tardanza en emplazamiento e imponiendo, en su lugar, una sanción económica a los abogados de la parte demandante).

Esta es la misma postura adoptada por el Tribunal Supremo de Puerto Rico con respecto a otros tipos de incumplimiento procesal. *Valentín v. Mun. de Añasco*, 145 D.P.R. 887, 895-896 (1998); *Amaro González v. First Fed. Savs.,* 132 D.P.R. 1042, 1054 (1993); véase, además, *Aponte v. Sears Roebuck de P.R., Inc.,* 129 D.P.R. 1042, 1050-1051 (1992).

En el presente caso, el E.L.A., según hemos visto, ha manifestado su interés en el ejercicio de su causa de acción. Dicha parte no emplazó a Triple S, debido a que el Tribunal se negó a emitir los emplazamientos correspondientes.

En estas circunstancias, estimamos que el Tribunal de Primera Instancia no debió desestimar la reclamación del E.L.A. contra dicha entidad. *Banco Popular v. S.L.G. Negrón, Toledo,* **2005 J.T.S. 84**, a la pág. 1,327; *Global Gas, Inv. v. Salaam Realty Corp.,* **2005 J.T.S. 48**, a la pág. 1,069; *López v. Porrata-Doria*, 140 D.P.R. a la pág. 103; *Banco Metropolitano v. Berríos,* 110 D.P.R. a la pág. 724.

Por los fundamentos expresados, se confirma la sentencia parcial apelada emitida desestimando la demanda en cuanto a la Dra. Villafañe y su cónyuge, así contra la compañía aseguradora de ésta.

Se modifica la sentencia parcial emitida por el Tribunal de Primera Instancia en cuanto al Dr. Fourquet, la esposa de éste y su compañía de seguros para aclarar que la reclamación contra dichas partes no está prescrita y que la denegatoria del Tribunal de admitir, en esta etapa, la demanda contra tercero en su contra no constituye una adjudicación en sus méritos de la reclamación.

Se revoca la sentencia sumaria parcial emitida por el Tribunal de Primera Instancia en cuanto a Triple S y las demás aseguradora del Dr. Fourquet, de manera consistente con lo expresado en la presente sentencia.

Se devolverá el caso al Tribunal de Primera Instancia para procedimientos consistentes con el presente dictamen.

Lo pronunció y lo manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones