EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Grimilda Sánchez Montalvo<br>        Peticionaria<br><br>            v.<br><br>Autoridad de Puertos y<br>American Airlines<br>        Recurridos | Certiorari<br><br>2001 TSPR 30 |

Número del Caso: CC-1997-296

Fecha: 07/marzo/2001

Tribunal de Circuito de Apelaciones:

                        Circuito Regional VII

Juez Ponente:

                        Hon. Ygrí Rivera de Martínez

Abogado de la Parte Peticionaria:

                        Lcdo. Luis Cabrera Medina

Abogados de la Parte Recurrida:

                        Lcdo. Rafael E. Dávila
                        Lcdo. Jaime F. Agrait Lladó

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Grimilda Sánchez Montalvo

    Peticionaria

       v.

                          CC-1997-296

Autoridad de Puertos y
American Airlines

    Recurridos

Opinión del Tribunal emitida por la Juez Asociada señora NAVEIRA DE RODÓN

San Juan, Puerto Rico a 7 de marzo de 2001

    La Sra. Grimilda Sánchez Montalvo (en adelante Sra. Sánchez o peticionaria) recurre ante nos de una sentencia dictada por el Tribunal de Circuito de Apelaciones (Tribunal de Circuito). En dicha sentencia se determinó que la causa de acción en daños y perjuicios de la peticionaria estaba prescrita porque la demanda se radicó luego de transcurrido el término prescriptivo para reclamar judicialmente sin que la peticionaria hubiese interrumpido efectivamente dicho término por la vía extrajudicial.

I

El 30 de agosto de 1993, la peticionaria llegó al Aeropuerto Internacional Luis Muñoz Marín en el vuelo 1045 de American Airlines (en adelante American), procedente de Orlando, Florida. Mientras la Sra. Sánchez salía del área de reclamo de equipaje de American, resbaló y cayó contra el piso, que alegadamente estaba mojado debido a que había llovido. Un agente de la Autoridad de Puertos (en adelante Puertos o Autoridad) le brindó ayuda. La peticionaria radicó una querella, y ese mismo día se redactó un informe del accidente en un formulario provisto por la Autoridad de Puertos.[1]

Mediante comunicación telefónica, Puertos informó a la peticionaria que había referido el caso a las oficinas de Alberto Pochet & Asociados, compañía aseguradora de la Autoridad. El 20 de octubre de 1993, el Lcdo. Luis Cabrera Medina, abogado de la peticionaria, le envió una carta a la aseguradora, en la cual le indicó que **"representamos a la perjudicada-reclamante en el caso de referencia"**. En dicha carta constaba también la fecha del accidente y que la Sra. Montalvo estaba recibiendo tratamiento médico.

El 2 de noviembre de 1993, la aseguradora contestó la carta de 20 de octubre, notificándole al abogado de la peticionaria que **"su notificación de reclamación** en representación de la parte arriba indicada nos ha sido referida"**. En esta carta, solicitaron concertar una entrevista con la Sra. Montalvo a los fines de "continuar el trámite de nuestra investigación (...) en lo que pudieramos (sic) describir como un descubrimiento de prueba informal". También solicitaron copia de certificados médicos y evidencia de daños especiales, entre otros.

La representación legal de la peticionaria no contestó esta carta.[2] El 7 de enero de 1994, la aseguradora envió otra carta indicando no haber recibido contestación de la anterior. En esta carta, se le indicó al abogado de la peticionaria que "basándonos en la investigación que realizáramos en los predios de nuestro cliente [Puertos], hemos determinado que este accidente ocurrió en un área que está bajo el control de American Airlines, a quienes hemos referido su **reclamación**. Le sugerimos que dirija su **reclamación** contra la aseguradora de American Airlines."[3] A pesar estas instrucciones, la carta también indicaba que la aseguradora continuaba en su intención de entrevistarse con la peticionaria.[4]

---

[1] Esta información surge de la sentencia del Tribunal de Circuito y del Informe de Accidente preparado por la División de Seguridad de la Autoridad de Puertos.

[2] Se alegó en la página 3 de la petición de certiorari que dicha carta no fue recibida en las oficinas del Lcdo. Cabrera.

[3] En la carta se informaba el nombre y dirección de la aseguradora de American, y el nombre de la persona a quien debía dirigirse la reclamación, Sr. Joseph P. Tacceta.

Luego de varias comunicaciones por escrito entre el Lcdo. Cabrera y la compañía aseguradora con el propósito de acordar una fecha para entrevistar a la peticionaria,[5] el 25 de octubre de 1994, el Lcdo. Cabrera se comunicó nuevamente con la aseguradora reiterando su interés en celebrar la entrevista. En esta carta, se detallaron los daños alegadamente sufridos por la peticionaria, y se indicó que los mismos ascendían a $30,000.

La reunión entre las partes se celebró finalmente el 8 de diciembre de 1994. Luego, el 19 de diciembre de 1994, la aseguradora envió carta a la representación legal de la peticionaria informándole que habían llegado a la conclusión de que la rampa donde ocurrió el accidente estaba bajo el control exclusivo de American Airlines, por lo que **la Autoridad no se haría responsable por la reclamación**, ni otorgaría suma de dinero alguna a la peticionaria.

En esta comunicación se le informó por primera vez a la peticionaria de que en el contrato de arrendamiento entre Puertos y American existía una cláusula de indemnización y relevo ("Hold Harmless Agreement"), y que, de acuerdo con dicha cláusula, la aseguradora de Puertos había referido definitivamente la reclamación a la United States Aviation Underwriters, compañía aseguradora de American.

Mientras ocurrieron todas estas comunicaciones entre la peticionaria y la aseguradora de Puertos,[6] el 9 de noviembre de 1993, la aseguradora de Puertos se comunicó por escrito con el Sr. Olie Ecklund, ajustador de reclamaciones de American Airlines. En dicha carta le informó del accidente ocurrido a la Sra. Sánchez, y se hizo referencia al "Hold Harmless Agreement" existente entre American y Puertos, en virtud del cual, en caso de que la reclamante radicase una demanda, American sería responsable. La aseguradora de Puertos envió dos cartas adicionales al Sr. Ecklund en relación con el accidente de la peticionaria, una el 4 de abril de 1994 y la otra el 19 de diciembre de 1994. No se recibió respuesta alguna por parte de American a dichas comunicaciones.

---

[4] En particular, la carta indicaba que: "Hasta el presente no hemos recibido contestación a nuestra solicitud de entrevistarnos con su cliente y así adelantar los pormenores de este accidente. De existir algún inconveniente para entrevistarnos con su cliente, le agradeceré nos lo deje saber".

[5] El 21 de enero de 1994, el Lcdo. Cabrera indicó que la Sra. Sánchez estaba disponible para ser entrevistada. El 18 de febrero, la aseguradora envió carta en la cual indicó que tenía disponible la semana del 28 de febrero al 4 de marzo para realizar la entrevista. El 14 de marzo el Lcdo. Cabrera escribió nuevamente a la aseguradora informándole que, por haber recibido la carta de 18 de febrero el día 2 de marzo, no había podido hacer los arreglos pertinentes con la Sra. Sánchez para que ésta fuera entrevistada en las fechas sugeridas.

[6] Las comunicaciones escritas a las que hemos hecho referencia están mencionadas en la demanda, y pasaron a formar parte del expediente del caso ya que la peticionaria las incluyó en su oposición a la moción de desestimación presentada por American. Por su parte, la línea aérea no presentó prueba alguna a los efectos de que dichas cartas no fueron hechas o recibidas por las partes en el litigio, ni tampoco cuestionó la veracidad de su contenido.

Así las cosas, el 10 de agosto de 1995, luego de ser notificado de que Puertos no se haría responsable de la reclamación, el Lcdo. Cabrera envió una carta al Sr. Ecklund. En la misma le indicaba que representaba a la Sra. Sánchez en relación con el accidente sufrido en el aeropuerto, y que los daños sufridos por la peticionaria se estimaban en $50,000. American no contestó dicha carta, ni las dos (2) cartas posteriores que el Lcdo. Cabrera le envió el 4 de octubre de 1995 y el 8 de diciembre de 1995.[7]

La demandante peticionaria radicó su demanda en daños y perjuicios contra Puertos y American el 18 de diciembre de 1995. En la misma, alegó haberse caído en el Aeropuerto Luis Muñoz Marín, específicamente en las instalaciones de American, los daños sufridos, y que **"el lugar donde sufriera el accidente pertenecía a la Autoridad de los Puertos, pero el área como tal estaba contratada por la línea American Air Lines"**. Además, hizo un recuento de los trámites realizados con Puertos y American. Por último, alegó en su demanda que **"los demandados son solidariamente responsables de los daños ocasionados a la demandante"**.

American radicó una moción de desestimación alegando que la reclamación en su contra estaba prescrita. La demandante presentó oposición con la cual incluyó una serie de documentos, entre estos, las comunicaciones mencionadas en la demanda y el Informe de Accidente de Puertos. American presentó oposición a este escrito sin incluir documento alguno para controvertir los presentados por la demandante peticionaria.

El tribunal de instancia dictó sentencia declarando con lugar la moción de desestimación radicada por American. En cuanto a Puertos, determinó que American tenía el control exclusivo del área donde ocurrió el accidente, y procedió a desestimar también la reclamación contra Puertos.[8]

Inconforme con esta determinación, la demandante peticionaria radicó apelación ante el Tribunal de Circuito. Éste confirmó la sentencia apelada, concluyendo que las comunicaciones que la peticionaria había cursado a Puertos no constituían una reclamación extrajudicial que interrumpiera el término prescriptivo. En cuanto a American, determinó que la acción también estaba prescrita.

De esta sentencia recurre la demandante peticionaria, alegando los siguientes errores:

> 1. Erró el Tribunal de Circuito de Apelaciones al señalar en la página 12 de su sentencia que el Tribunal de Instancia resolvió que la "demandante no interrumpió el término prescriptivo con sus reclamaciones extrajudiciales a los codemandados, por lo cual la acción había prescrito".
>
> 2. Erró el Tribunal de Circuito de Apelaciones al considerar la apelación interpuesta a la luz de las cartas cursadas por la peticionaria a la Autoridad de Puertos con fecha de 20 de octubre de 1993 y 21 de enero de 1994 y si ellas cumplieron con el requisito de identidad y por ende el efecto de interrumpir el término prescriptivo.

---

[7] En esta última carta, se reclamaron daños por $75,000.

[8] Esta determinación se fundamenta en el contenido de las cartas incluidas en la oposición a la desestimación presentada por la demandante peticionaria.

3. Erró el Tribunal de Circuito de Apelaciones al determinar que la acción estaba prescrita debido a que el representante legal de la peticionaria no dirigió su reclamación al sujeto pasivo responsables (sic) del daño ocasionándole a la peticionaria; y conjunto al no considerar la relación contractual entre Puertos y American a la luz de las cláusulas que las relacionaban y la solidaridad dimanante de dicha relación.

Expedimos el recurso solicitado. Todas las partes han comparecido y con el beneficio de sus alegatos procedemos a resolver.

II

La prescripción es materia sustantiva y no procesal, regida por los principios que informan el Derecho Civil. Olmo v. Young & Rubicam, 110 D.P.R. 740, 742 (1981). El Art. 1861 del Código Civil establece que "[l]as acciones prescriben por el mero lapso del tiempo fijado por la ley", 31 L.P.R.A. sec. 5291.

Sabido es que el término prescriptivo para las acciones de daños y perjuicios derivadas de la culpa o negligencia que surgen del Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, es de un (1) año. Así lo dispone el Art. 1868 del Código Civil, 31 L.P.R.A. sec 5298. Por su parte, el inciso (2) de ésta sección dispone que este plazo prescriptivo comienza a transcurrir a partir del momento en que el agraviado tuvo conocimiento del daño. Esto implica saber que se ha sufrido un daño y **quien lo causó**. Riley v. Rodríguez Pacheco, 119 D.P.R. 762, 775-776 (1987); Rivera Encarnación v. E.L.A., 113 D.P.R. 383, 385 (1982).

De otra parte, el Art. 1873 del Código Civil, 31 L.P.R.A. sec 5303, dispone que:

La prescripción de las acciones se interrumpe por su ejercicio ante los tribunales, por reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de la deuda por el deudor.

Este Tribunal ha señalado que el acto interruptivo representa la manifestación inequívoca de una voluntad contraria al mantenimiento de la situación inerte manifestada ésta con anterioridad a que el plazo de deliberación se agote. García Aponte *el at* v. E.L.A. *et al*, 135 D.P.R. 137 (1994). Zambrana v. E.L.A., 129 D.P.R. 740 (1992). El efecto de los mecanismos de interrupción es que el plazo de prescripción debe volver a computarse por entero desde el momento en que se produce el acto que interrumpe. González v. Wal Mart, Op. del 9 de diciembre de 1998, 98 J.T.S. 149 (1998); Díaz de Diana v. A.J.A.S., 110 D.P.R. 471 (1980).

En cuanto a la interrupción de la prescripción mediante reclamación extrajudicial, ésta se refiere a la manifestación inequívoca de quien, amenazado con la pérdida de su derecho, expresa su voluntad de no perderlo. Feliciano v. A.A.A., 93 D.P.R. 655 (1966); De Jesús v. Chardón, 116 D.P.R. 238 (1985); Cintrón v. E.L.A., 127 D.P.R. 582 (1990). Este tipo de reclamación sirve varios propósitos fundamentales, siendo los principales: interrumpir el transcurso del término prescriptivo de las acciones; fomentar las transacciones extrajudiciales; y, notificar, a grandes rasgos, la naturaleza de la

reclamación. De León v. Caparra Center, Op. de 19 de marzo de 1999, 99 JTS 29 (1999). No se requiere que la reclamación extrajudicial tenga una forma determinada. González v. Wal-Mart, supra; Acosta Quiñones v. Matos Rodríguez, 135 D.P.R. 668 (1994).

En Galib Frangie v. El Vocero, 138 D.P.R. 560 (1995), se establecen los requisitos que debe cumplir una reclamación extrajudicial para que la misma constituya una interrupción de la prescripción. Estos son: 1) la reclamación debe ser oportuna, lo cual requiere que se realice antes de la consumación del plazo; 2) es necesaria la legitimación del reclamante, ello es, que la reclamación se haga por el titular del derecho o acción; 3) se requiere la idoneidad del medio utilizado para realizar la reclamación; y 4) debe existir identidad entre el derecho reclamado y aquél afectado por la prescripción. Además se ha señalado que la carga de la prueba corresponde a quién alega que interrumpió el término de prescripción. Acosta Quiñones v. Matos Rodríguez, supra. También hemos establecido que en la reclamación extrajudicial, "no hay relación limitativa hecha por la ley sobre qué actos son los que se incluyen en esta causa interruptiva, admitiendo como tales todos aquellos en que la voluntad del acreedor quede patente." Galib Frangie v. El Vocero de P.R., citando a Zambrana v. E.L.A., supra.

### III

Por otra parte, en el caso de marras la codemandada American presentó una moción de desestimación.[9] El tribunal de instancia consideró dicha moción y procedió a dictar sentencia desestimando la demanda.

La Regla 10.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, permite al demandado solicitar que se desestime la demanda en su contra cuando es evidente de las alegaciones de la demanda que alguna de las defensas afirmativas prosperará. En este caso, se alegó que la demanda no exponía una reclamación que justificara la concesión de un remedio. Para resolver una moción de desestimación, el tribunal tiene que tomar como ciertas las alegaciones de la demanda. Pressure Vessels of P.R. v. Empire Gas of P.R., 137 D.P.R. 497 (1994); Ramos v. Orientalist Rattan Furn., Inc., 130 D.P.R. 712 (1992).

De otra parte, hay que considerar que la demanda sólo tiene que contener "una relación sucinta y sencilla de la reclamación demostrativa de que el peticionario tiene derecho a un remedio." Regla 6.1 de Procedimiento Civil, supra. Las alegaciones únicamente tienen el propósito de notificar, a grandes rasgos, a la parte demandada, de las reclamaciones en su contra, para que ésta pueda comparecer a defenderse si así lo desea. Reyes v. Cantera Ramos, 139 D.P.R. 925 (1996); Central Corp. v. Capitol Plaza, Inc., 135 D.P.R. 760 (1994). Al entender en una moción de desestimación, las alegaciones en una demanda hay que interpretarlas conjuntamente y liberalmente a favor del promovido.

La Regla 10.2 de Procedimiento Civil también establece que si en una moción de desestimación en la cual se formula la defensa de dejar de exponer una reclamación que justifique la concesión de un remedio, se exponen materias no contenidas en la alegación impugnada, y el tribunal no excluye las mismas, la moción debe considerarse como una moción de sentencia sumaria. Si esto sucede, la regla establece que la moción estará sujeta los trámites ulteriores provistos en la Regla 36 de Procedimiento Civil, que dispone lo relativo a la sentencia dictada sumariamente.

Las Reglas 36.1 y 36.2 de Procedimiento Civil establecen el derecho que tienen tanto la parte demandada como la parte demandante en un caso a presentar una moción para que se dicte sentencia sumariamente. A estos efectos, hemos señalado que "el tribunal debe cerciorarse de la total inexistencia de controversias de hecho, y que el residuo sea la aplicación del derecho". Consejo de Tit. C. Parkside v. MGIC Fin. Corp., 128 D.P.R. 538, 548 (1991), citando a Roig Com. Bank v. Rosario Cirino, 126 D.P.R. 617-618.

También hemos establecido que la parte contra quien se promueve una moción de sentencia sumaria no puede cruzarse de brazos y descansar en sus alegaciones, sino que tiene que refutar los hechos alegados mediante presentación de prueba. Mercado Vega v. U.P.R., 128 D.P.R. 273 (1991). No obstante, la parte promovente está obligada a demostrar, fuera de toda duda, la inexistencia de una controversia real sobre todo hecho material sustancial. Mercado Vega v. U.P.R., supra.

Dentro de este marco fáctico y procesal, pasemos a analizar la controversia de autos.

IV

Como ya relatáramos, la peticionaria sufrió el alegado accidente el 30 de agosto de 1993 y radicó su demanda el 18 diciembre de 1995, aproximadamente dos (2) años y cinco (5) meses después de haber ocurrido el accidente. Claramente, el plazo de un (1) año que establece el Código Civil para reclamar en las acciones por culpa o negligencia había transcurrido.

Sin embargo, el 20 de octubre de 1993, a escasos tres (3) meses de haber ocurrido el alegado accidente, la peticionaria, a través de su representación legal, envió una carta a la aseguradora de Puertos. En esa carta, se informaba que representaba a la **reclamante-perjudicada**, que ésta había sufrido un accidente en los predios del aeropuerto Luis Muñoz Marín, la fecha del suceso, y que la peticionaria se encontraba recibiendo tratamiento médico.

Del expediente surge con meridiana claridad que esta notificación cumple con los requisitos establecidos por la jurisprudencia para que una reclamación extrajudicial tenga el efecto de interrumpir el término prescriptivo: la reclamación la hizo la propia

---

[9] Puertos se limitó a presentar una moción solicitando exposición más definida.

peticionaria, Sra. Sánchez, a través de su representación legal y dentro del término prescriptivo original; el medio utilizado fue una carta dirigida a la aseguradora de Puertos, medio que resultó idóneo ya que efectivamente se recibió dicha comunicación y fue contestada; y la notificación se refería al derecho afectado por la prescripción, o sea, el accidente ocurrido en las instalaciones del aeropuerto. Además, es importante señalar que la aseguradora de Puertos claramente entendió que se trataba de una reclamación ya que al contestar la primera carta, se refirió a la misma como **"notificación de reclamación"**. Esto es indicativo de que al menos desde el 2 de noviembre de 1993, Puertos estaba en conocimiento de que existía una reclamación en su contra por razón del accidente ocurrido a la Sra. Sánchez.

Luego de la primera carta cursada por la representación legal de la peticionaria el 20 de octubre de 1993, ocurrieron múltiples comunicaciones escritas entre la peticionaria y la aseguradora de Puertos, las cuales ya hemos relatado, todas con relación a la reclamación de la Sra. Sánchez. Cabe señalar que aunque no todas las comunicaciones posteriores entre las partes se referían específicamente al accidente y los daños alegadamente sufridos por la peticionaria, este Tribunal ha resuelto que "una vez se ha efectuado una reclamación extrajudicial suficiente en derecho, no es necesario que cada vez que el acreedor desee interrumpir nuevamente el término prescriptivo, se repitan asuntos previamente expresados; ello siempre que se pueda concluir que de las posteriores cartas surja la intención de éste de no perder su derecho." De León v. Caparra Center, supra, pág. 705. En el caso de autos, se cumple con esta condición, ya que las comunicaciones posteriores entre la peticionaria y Puertos estaban dirigidas a esclarecer los detalles de la reclamación, desde concertar entrevista con la peticionaria hasta el envío de récords médicos relativos a los daños alegados. Ante este cuadro de hechos concluimos que erró el Tribunal de Circuito al encontrar prescrita la demanda en cuanto a Puertos.

En cuanto a la reclamación contra American, la situación es distinta. Los hechos del caso indican que desde el mismo día del accidente, la peticionaria sabía o debió saber que American le podía ser responsable por sus daños, ya que el accidente ocurrió a la salida del área de reclamo de equipaje de esta línea aérea. Además, aún aceptando que la peticionaria no adivino en ese conocimiento desde el mismo día del accidente, al menos para el 7 de enero de 1994, la peticionaria conoció del hecho de que American podía serle responsable por sus daños, ya que en esa fecha la aseguradora de Puertos le comunicó que de sus investigaciones preliminares surgía que el área donde ocurrió el accidente estaba bajo el control de American, y que debía dirigir su reclamación a la atención de la línea aérea.

Sin embargo, no fue hasta el 10 de agosto de 1995, a más de un (1) año después de recibir esta información por parte de Puertos, y casi dos (2) años después del accidente, que el abogado de la peticionaria se comunicó con la aseguradora de American por primera

vez. Esto luego de enterarse de la decisión definitiva de Puertos de que American era la responsable del área donde ocurrió el accidente y por consiguiente, no le haría ningún pago a la Sra. Sánchez. La demanda, según se indicó, fue presentada el 18 de diciembre de 1995, a más de dos (2) años de los hechos.

De acuerdo a estos hechos y al derecho relativo a la figura de la prescripción, la peticionaria, a través de las comunicaciones escritas que le envió a American, no interrumpió el término prescriptivo en cuanto a la línea aérea se refiere. Esto, sin embargo, no resuelve el planteamiento de si procede o no la desestimación de la demanda contra American por estar prescrita. Veamos.

En su demanda, la peticionaria alegó claramente que el área donde ocurrió el accidente estaba mojada, y que dicha área, aunque era propiedad de Puertos, estaba bajo el control de American. Alegó además que ambas demandadas no ejercieron el mantenimiento apropiado, ni el debido cuidado para garantizar la seguridad y protección de la peticionaria. También alegó que los demandados eran solidariamente responsables por los daños que había sufrido.

Es claro que la peticionaria expuso adecuadamente y en términos generales en la demanda que hubo un daño causado a su persona debido a la negligencia conjunta de Puertos y American, o sea, hizo una alegación general de responsabilidad solidaria. Como ya señaláramos, en nuestro ordenamiento la demanda sólo requiere una relación sucinta y sencilla de la reclamación de manera que el demandado entienda qué es lo que se le reclama y pueda defenderse.

Un análisis de los hechos procesales en este caso indica que en esta etapa de los procedimientos, las alegaciones que hizo la peticionaria en su demanda en cuanto a la responsabilidad solidaria entre Puertos y American, eran suficientes para aducir una causa de acción contra American. No procedía pues, la desestimación de la demanda. Además, American tampoco rebatió con contra documentos la evidencia documental presentada por la peticionaria en su oposición a la moción de desestimación. Por lo tanto, tampoco procedía dictar sentencia sumaria desestimando las reclamaciones.

No estando la causa de acción prescrita en cuanto a Puertos, y habiéndose alegado la responsabilidad solidaria entre Puertos y American, la interrupción del término prescriptivo con relación a Puertos interrumpió el término igualmente para American. Véase Martínez v. E.L.A., 132 D.P.R. 200 (1992), citando a Tropigas de P.R. v. Tribunal Superior, 102 D.P.R. 630 (1974) y Rivera Otero v. Casco Sales Co., 115 D.P.R. 662 (1984).

V

Por los fundamentos antes expuestos, procede revocar tanto la sentencia emitida por el Tribunal de Circuito como la dictada por el foro de instancia y devolver el caso para que continúen los procedimientos de forma compatible con lo aquí resuelto.

Miriam Naveira de Rodón
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Grimilda Sánchez Montalvo

    Peticionaria

       v.

                                    CC-1997-296

Autoridad de Puertos y
American Airlines

    Recurridos

SENTENCIA

San Juan, Puerto Rico, a 7 de marzo de 2001

      Por todo lo expuesto en la Opinión que antecede, la cual es parte integral de la presente, se revoca la sentencia emitida por el Tribunal de Circuito de Apelaciones el 29 de abril de 1997. Se devuelve el caso para que continúen los procedimientos de forma compatible con lo aquí resuelto.

      Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez disiente sin opinión escrita.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo