Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| DCE HOMEOWNERS ASSOCIATION, INC. Recurrida<br><br>v.<br><br>COMPAÑÍA X, Y, Z y otros<br><br>**DCE ENTERPRISES, INC.** Peticionaria | KLCE202401157 | *CERTIORARI* Procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Civil Núm.: BY2022CV00656<br><br>Sobre: Daños, *Injunction* (Entredicho Provisional, *Injunction* Preliminar y Permanente), Nulidad de Contrato, Sentencia Declaratoria |

Panel integrado por su presidente el Juez Candelaria Rosa[1], la Jueza Santiago Calderón y la Jueza Álvarez Esnard

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 6 de diciembre de 2024.

Comparece ante nos DCE Enterprises, Inc. ("DCE Enterprises" o "Peticionario") mediante *Petición de Certiorari* recibida el 24 de octubre de 2024. Nos solicita que revoquemos una *Resolución* dictada y notificada el 24 de septiembre de 2024, por el Tribunal de Primera Instancia, Sala Superior de Bayamón ("foro primario" o "foro *a quo*"). Mediante el aludido dictamen, el foro primario declaró *No Ha Lugar* dos (2) mociones de desestimación presentadas por el Peticionario.

Por los fundamentos que expondremos a continuación, **expedimos** el recurso de *certiorari* y **revocamos** la determinación recurrida.

-I-

Conforme surge del expediente ante nuestra consideración, el 16 de febrero de 2022, DCE Homeowners Association, Inc. ("DCE

---

[1] Mediante Orden Administrativa OATA-2024-117 se designa al Hon. Carlos I. Candelaria Rosa, debido a que la Hon. Olga E. Birriel Cardona dejó de ejercer funciones como Jueza del Tribunal de Apelaciones.

Homeowners" o "Recurrido") presentó *Demanda* sobre *injunction* preliminar, *injunction* permanente, sentencia declaratoria y daños contractuales contra DCE Enterprises.[2] Mediante esta, alegó que el Peticionario fue el sucesor en interés del desarrollador de la Urbanización Dorado Country Estates ("Urbanización"), sita en el municipio de Dorado. Adujo que el DCE Enterprises aparecía como dueño del Lote Núm. 43 de la Urbanización en el Registro de la Propiedad e igualmente, el Recurrido figuraba como la actual asociación encargada de la administración de las áreas comunes de la mencionada urbanización.

Por otra parte, el DCE Homeowners añadió en su reclamación que la Urbanización se encontraba sujeta a condiciones restrictivas las cuales provenían de la Escritura Núm. 3 de 12 de mayo de 1998, intitulada *Declaration of Protective Covenants and Restrictions on Construction for Dorado Country Estates,* y que el desarrollo de esta se encontraba sujeta al plano de inscripción aprobado por las agencias gubernamentales. De otro lado, la Recurrida indicó que de dicha escritura pública se desprendía que la Urbanización constaba de sesenta y cuatro (64) lotes, de las cuales el Lote Núm. 43 era el único destinado a ser un área de recreación y reunión.

Del mismo modo, la Recurrida argumentó que conforme surge de la Escritura Núm. 3, el Peticionario, como desarrollador sucesor de la Urbanización, se obligó a traspasar a DCE Homeowners el Lote Núm. 43 con la finalidad de que sus miembros pudieran usar las facilidades allí construidas. Agregó que el 1 de febrero de 2022, la Junta de Directores de DCE Homeowners, advino en conocimiento de que un residente de la Urbanización firmó un contrato de opción para adquirir el Lote Núm. 43, pero desistió antes de la compra. No empece a ello, el Peticionario continúo realizando

---

[2] Véase, apéndice del recurso, págs. 10-22.

distintas gestiones para vender el Lote Núm. 43. Ante este escenario,

DCE Homeowners solicitó los siguientes remedios:

> (i) una orden de entredicho provisional (injunction preliminar) prohibiendo a DCE enajenar el Lote 43 y/o demoler las facilidades del Lote 43, (ii) un injunction permanente, (iii) una sentencia declaratoria estableciendo que cualquier contrato dirigido a traspasar el Lote 43 a un tercero es Nulo, y estableciendo además que la Asociación tiene el derecho a la titularidad, uso y disfrute del Lote 43 y las facilidades allí construidas, (iv) una sentencia imponiéndole a DCE la responsabilidad de reparar las facilidades en el Lote 43, o el resarcimiento daños a la Asociación por el costo en que incurra para reparar las facilidades y (v) una orden imponiendo costas y honorarios de abogado a DCE por temeridad, junto con cualquier otro pronunciamiento que proceda en derecho.[3]

Simultáneamente, el 16 de febrero de 2022, el Peticionario radicó *Solicitud Ex Parte de Orden de Entredicho Provisional e Injunction Preliminar bajo la Regla 57 de Procedimiento Civil*, y, además, presentó *Urgente Solicitud Ex parte de Orden de Prohibición de Enajenar bajo la Regla 56 de Procedimiento Civil*.[4] En esencia, estas mociones iban dirigidas a ordenarle a DCE Enterprises a prohibir vender, arrendar o traspasar el Lote Núm. 43 de la Urbanización a un tercero, ni que las estructuras que allí se encontraban fuesen demolidas.

Atendido estos escritos, el 17 de febrero de 2022, el foro primario emitió *Orden y Citación*.[5] En esta, el foro primario dispuso una serie de asuntos, entre estos, el declarar *No Ha Lugar* el entredicho provisional y señalar vista de interdicto preliminar. De igual forma, ese mismo día, el foro primario emitió una *Orden de Prohibición de Enajenar*.[6]

Por su parte, el 24 de febrero de 2022, el Peticionario, presentó *Moción de Desestimación por Falta de Legitimación*.[7] En esta, sostuvo

---

[3] *Íd.*, págs. 21-22.
[4] *Íd.*, págs. 102-120.
[5] *Íd.*, págs. 135-139.
[6] *Íd.*, pág. 121.
[7] *Íd.*, págs. 277-282.

que DCE Homeowners no era la organización de residentes que se creó para administrar y hacer valer los derechos de la Urbanización, sino que la organización que se creó para dichos fines fue la Dorado Country Estates Property Owners Association. Sostuvo que la Escritura Núm. 3 creó la Dorado Country Estates Property Owners Association, que esta fue incorporada el 15 de mayo de 1998 y que, posteriormente, se cambió el nombre a Dorado Country Estates Homeowners Association, Inc. ("Antigua Asociación"), la cual aún sigue activa. A tono con lo anterior, el Peticionario sostuvo que el Recurrido no tenía legitimación activa para incoar las causas de acción que iniciaron la presente controversia. Ese mismo día, la DCE Enterprises presentó una *Moción para dejar sin efecto Orden de Prohibición de Enajenar*.[8] Mediante esta, señaló que solamente la Antigua Asociación de residentes de la Urbanización tenía autoridad para reclamar bajo la Escritura Núm. 3.

Por su lado, el Recurrido presentó *Breve Oposición a Moción para que se deje sin efecto la Orden de Prohibición de Enajenar* y *Breve Oposición a Moción de Desestimación*.[9] En esta reiteró que no se podía levantar la orden de prohibición de enajenar antes de la vista de interdicto, pues esto representaría un peligro inminente de que el Lote Núm. 43 fuese vendido. Por otra parte, en cuanto a moción de desestimación, arguyó que en un pleito anterior entre las partes, en el cual se disputaba la legitimidad de la Recurrida para administrar la Urbanización, DCE Enterprises solicitó la desestimación de dicho pleito sin perjuicio.

Así las cosas, el 1 de marzo de 2022, la Antigua Asociación, presentó *Moción de Intervención bajo la Regla 21 de Procedimiento Civil y Uniéndose a Demanda*.[10] Mediante esta reclamó, entre otros

---

[8] *Íd.*, págs. 140-156.
[9] *Íd.*, págs. 292-297.
[10] *Íd.*, págs. 307-318.

asuntos, tener interés en la *Demanda* incoada por DCE Homeowners y solicitó formar parte de esta.

Posteriormente, ese mismo día, entiéndase, el 1 de marzo de 2022, el foro primario llevó a cabo una Vista de Interdicto Preliminar. No obstante, conforme surge de la *Minuta* de la aludida vista,[11] esta no se pudo llevar a cabo a consecuencia de la moción de intervención presentada por la Antigua Asociación, por lo cual el foro *a quo* convirtió la vista en una de fijación de fianza. Culminada la vista, el foro primario emitió *Resolución y Orden*[12] mediante la cual le ordenó a DCE Homeowners a prestar una fianza de un millón de dólares ($1,000,000.00) en un término de quince (15) días a tenor con las Reglas 56.3 y 56.4 de Procedimiento Civil, 32 LPRA Ap. V. Subsiguientemente, el 11 de marzo de 2022, DCE Enterprises presentó *Oposición a Moción de Intervención bajo la Regla 21 de Procedimiento Civil y Uniéndose a Demanda (Expediente SUMAC Núm. 1).*[13] En esta, la Recurrida sostuvo que la moción de intervención no era el mecanismo idóneo para la inclusión de la Antigua Asociación en el pleito, sino que esta se debió traer a través de una enmienda a la demanda y acumularlos como parte indispensable.

En el ínterin, al no estar conforme con la fianza impuesta, el 16 de marzo de 2022, DCE Homeowners compareció ante esta Curia mediante un recurso de *certiorari* en el caso KLCE202200302.[14] El 27 de junio de 2022, un panel hermano emitió *Sentencia,* en la cual expidió el auto de *certiorari* y revocó la determinación recurrida. Cabe destacar que dicha Sentencia contó con un *Voto de Conformidad y Disidente en Parte* de la jueza Santiago Calderón al cual se unió la jueza Álvarez Esnard, dos (2) de las tres (3) juezas

---

[11] *Íd.*, págs. 319-324.
[12] *Íd.*, pág. 325.
[13] *Íd.*, págs. 328-339.
[14] *Íd.*, págs. 386-415.

que componían el panel que atendió el recurso.[15] En el aludido voto, ambas juezas expresamente disintieron con adentrarse a realizar determinaciones sobre controversias relacionadas con la Escritura Núm. 3, las cuales no habían sido adjudicadas por el foro primario.[16]

Transcurridos varios eventos procesales los cuales son innecesario detallar, el 29 de mayo de 2023, el DCE Enterprises interpuso *Moción de Desestimación por Prescripción.*[17] Mediante esta, aclaró que aún se encontraba pendiente de resolver la moción de desestimación por falta de legitimación activa presentada. No empece a ello argumentó que, en la alternativa de que no procediera dicha moción, aún persistía la defensa de prescripción. Levantó que el fundamento para el aludido argumento emana de la Escritura Núm. 3, de la cual se desprendía una obligación contractual. Por tanto, tenía un término de quince (15) años para exigir su cumplimiento. Adujo que, dado a que la *Demanda* se entabló veintitrés (23) años después de otorgada la escritura en cuestión, la causa de acción estaba prescrita.

Posteriormente, el 1 de agosto de 2024, el DCE Enterprises presentó *Solicitud para pronta disposición de: Moción de desestimación por falta de legitimación (SUMAC #22) y Moción de desestimación por prescripción (SUMAC#81)* y el 3 de septiembre de 2024 *Segunda Solicitud para pronta disposición de: Moción de desestimación por falta de legitimación (SUMAC #22) y Moción de desestimación por prescripción (SUMAC#81).*[18] Mediante estas, el Peticionario solicitó al foro primario que resolviera las dos (2) mociones de desestimación que había presentado previamente.

Así las cosas, el 24 de septiembre de 2024, el foro primario emitió *Resolución.*[19] Por virtud de esta, declaró *No Ha Lugar* tanto la

---

[15] *Íd.*, págs. 413-415.
[16] *Íd.*, pág. 414.
[17] *Íd.*, págs. 416-423.
[18] *Íd.*, págs. 489-492.
[19] *Íd.*, págs. 1-7.

moción de desestimación por falta de legitimación como la moción de desestimación por prescripción. Fundamentó su determinación en que, en la página 24 del caso KLCE202200302, el panel hermano dictaminó que DCE Homeowners era la organización a la cual la Escritura Núm. 13 hacía referencia, por lo que ya este foro apelativo intermedio había reconocido expresamente la legitimación para hacer valer los derechos de los residentes de la Urbanización. Asimismo, el foro primario resolvió que, dando por cierto las alegaciones de la demanda, tampoco procedía resolver el pleito en contra de DCE Homeowners. En cuanto la desestimación por prescripción, el foro primario razonó que el término prescriptivo aún no había comenzado a transcurrir, toda vez que la obligación se tornó exigible desde el día que podía ejercitarse, y conforme a las alegaciones de la *Demanda*, no fue hasta el 18 de marzo de 2019 que los dueños de lotes obtuvieron control de la asociación de residentes y el 1 de febrero de 2022, estos se enteraron que DCE Enterprises tenía intenciones de vender las aéreas recreativas a un tercero. Por ende, el término prescriptivo aún no había transcurrido.

Inconforme, el 24 de octubre de 2024, el DCE Enterprises compareció ante esta Curia mediante el recurso de epígrafe y formuló los siguientes señalamientos de error:

Primer Error: Erró el Tribunal de Primera Instancia al negarse a desestimar la demanda por falta de legitimación activa y fundamentar su decisión en expresiones previas de este foro apelativo que constituyen *obiter dictum*.

Segundo Error: Erró el Tribunal de Primera Instancia al -en su análisis de la moción de desestimación por falta legitimación- tomar como incuestionablemente ciertas las alegaciones de la demanda y excluir de su análisis hechos y documentos de los que debió haber tomado conocimiento judicial y de los que fehacientemente surge la falta de legitimación del demandante para entablar el presente litigio.

Tercer Error: Erró el Tribunal de Primera Instancia al negarse a desestimar la demanda por prescripción.

El 24 octubre de 2024, esta *Curia* emitió una *Resolución* en la que se le concedió un término de diez (10) días al Recurrido para que mostrara causa por la cual no debíamos expedir el auto de *certiorari* y revocar la determinación recurrida. Oportunamente, el 12 de noviembre de 2024, el Recurrido compareció mediante *Oposición a que se Expida el Certiorari.* Con el beneficio de la comparecencia de ambas partes, procedemos a exponer la normativa jurídica aplicable a la controversia objeto del recurso de epígrafe.

**II.**

### *A. Certiorari*

"[U]na resolución u orden interlocutoria, distinto a una sentencia, es revisable mediante *certiorari* ante el Tribunal de Apelaciones". *JMG Investment v. ELA et al.*, 203 DPR 708, 718 (2019). "El recurso de *certiorari* es un mecanismo procesal de carácter discrecional que le permite a un tribunal de mayor jerarquía revisar las determinaciones del tribunal recurrido". *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023) citando a *McNeil Healthcare v. Mun. de Las Piedras I,* 206 DPR 391, 403 (2021).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R.52.1, establece que el recurso de *certiorari* solo se expedirá cuando se recurra de (1) una resolución u orden sobre remedios provisionales o *injunction* o (2) la denegatoria de una moción de carácter dispositivo. Por excepción, se puede recurrir también de: (1) decisiones sobre la admisibilidad de testigos o peritos; (2) asuntos de privilegios; (3) anotaciones de rebeldía; (4) en casos de relaciones de familia, o (4) en casos que revistan interés público. *Íd.* De igual manera, puede revisarse "cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia". *Íd.*

Los límites a la facultad revisora del foro apelativo tienen como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación. *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486-487 (2019).

No obstante, la discreción del tribunal apelativo en este aspecto no opera en un vacío ni sin parámetros. *Mun. de Caguas v. JRO Construction,* 201 DPR 703, 712 (2019). La Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, señala los criterios que se deben tomar en consideración al evaluar si procede expedir un auto de *certiorari.* Véase, además, *BPPR v. SLG Gómez-López,* 213 DPR __ (2023), 2023 TSPR 145, resuelto el 19 de diciembre de 2023. Estos criterios son:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El Tribunal Supremo ha expresado que la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Mun. de Caguas v. JRO Construction, supra,* pág. 712. No obstante, "[a]l denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión". 32 LPRA Ap. V, R. 52.1.

### B. Regla 10.2 de Procedimiento Civil

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, permite a la parte demandada solicitar al tribunal que desestime la demanda antes de contestarla "cuando es evidente de las alegaciones de la demanda que alguna de las defensas afirmativas prosperará". *Conde Cruz v. Resto Rodríguez*, 205 DPR 1043, 1065 (2020) citando a *Sánchez v. Aut. de los Puertos*, 153 DPR 559, 569 (2001). La precitada regla fija los siguientes fundamentos para solicitar la desestimación: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; y (6) dejar de acumular una parte indispensable.

Al evaluar una solicitud desestimatoria, "el tribunal tomará como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas". *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409 (2008). Cabe destacar que, "no procede la desestimación a menos que se deduzca con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo a su reclamación". *El Día, Inc. v. Mun. de Guaynabo*, 187 DPR 811, 821 (2013); *Consejo Titulares v. Gómez Estremera*, 184 DPR 407, 423 (2012).

Ante una moción de desestimación, "resulta evidente interpretar las alegaciones conjunta y liberalmente a favor del promovido". *Torres, Torres v. Torres Serrano*, 179 DPR 481, 502 (2010); *Sánchez v. Aut. de Los Puertos, supra*, pág. 570. El tribunal debe examinar "si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es

suficiente para constituir una reclamación válida". *Colón v. Lotería*, 167 DPR 625, 649 (2006); *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 DPR 497, 505 (1994).

### C. Ley del Caso

La doctrina de la ley del caso es un principio que garantiza el trámite ordenado y rápido de los litigios, así como la estabilidad y la certeza del derecho que aplican los tribunales. Constituye una sana práctica judicial que solo puede obviarse en situaciones extremas. *Núñez Borges v. Pauneto Rivera*, 130 DPR 749, 754-755 (1992); *Torres Cruz v. Municipio de San Juan*, 103 DPR 217, 222 (1975). Por otro lado, la doctrina de la ley del caso procura que se respeten como finales aquellas controversias sometidas, litigadas y decididas de manera firme, por un tribunal dentro de un caso. *Cacho Pérez v. Hatton Gotay,* 195 DPR 1, 9 (2016). Es decir, deben evitarse, en lo posible, la emisión de dictámenes contradictorios e inconsistentes. *Íd.*

En nuestro sistema de derecho, solo constituyen la ley del caso los derechos y obligaciones adjudicados en el ámbito judicial, mediante dictamen final y firme. *Cacho Pérez v. Hatton Gotay, supra,* pág. 8; *Mgmt. Adm. Servs. Corp. v. E.L.A.*, 152 DPR 599, 606-607 (2000). Ello, debido a que esos derechos y obligaciones gozan de finalidad y firmeza para que las partes pueden proceder "sobre unas directrices confiables y certeras". *Íd,* págs. 8-9. Así que, de ordinario, las controversias que han sido adjudicadas por el foro primario o por un tribunal apelativo no pueden rexaminarse. *Íd.*

Particularmente, esta doctrina establece que las determinaciones judiciales que constituyen ley del caso serán aquellas *cuestiones finales* consideradas y decididas por el tribunal. *Cacho Pérez v. Hatton Gotay, supra; Félix v. Las Haciendas*, 165 DPR 832, 843 (2005). Como norma general, estas determinaciones

obligan, "tanto al tribunal de instancia como al que las dictó, si el caso vuelve ante su consideración". Es decir, esta doctrina solo podrá invocarse cuando exista una decisión final de la controversia en sus méritos. *Íd.*

La doctrina de la ley del caso no es un mandato invariable o inflexible. Recoge, más bien, una costumbre judicial deseable que consiste en que las controversias sometidas, litigadas y decididas por un tribunal dentro de una misma causa deben usualmente respetarse como finales. De ese modo, las partes en un litigio pueden, en lo posible, conducir su proceder en el pleito sobre unas directrices judiciales confiables y certeras. *Rosso Descartes v. B.G.F*, 187 DPR 184 (2012); *Núñez Borges v. Pauneto Rivera, supra.* No obstante, cuando la ley del caso es errónea y puede causar una gran injusticia, el mismo foro sentenciador o un foro de jerarquía superior puede emplear una norma de derecho diferente, solo en situaciones excepcionales. *Mgmt. Adm. Servs. Corp. v. E.L.A., supra,* pág. 607.

"[S]olo cuando se presenta un atentado contra los principios básicos de la justicia, es que los tribunales pueden descartar la aplicabilidad de la doctrina de la ley del caso". *Cacho Pérez v. Hatton Gotay, supra,* pág. 10. Lo importante es que se alegue su exclusión mediante un mecanismo procesalmente adecuado y que el foro que atienda la cuestión tenga jurisdicción para considerarla y emitir la nueva determinación. *Noriega v. Gobernador*, 130 DPR 919, 931 (1992); *Srio. del Trabajo v. Tribunal Superior*, 95 DPR 136, 140 (1967).

**III.**

En el caso que nos ocupa, el Peticionario nos solicita que revoquemos una *Resolución* emitida por el foro primario en la cual declaró *No Ha Lugar* dos (2) mociones de desestimación incoadas por este. En específico, en su primer señalamiento de error, sostiene

que el foro primario incidió al no desestimar el pleito por falta de legitimación activa, toda vez que la determinación recurrida se fundamenta en unas expresiones de este foro apelativo que constituyen *obiter dictum*. Por otro lado, en su segundo señalamiento de error, aduce que el foro *a quo* también erró al no desestimar el pleito al simplemente dar por ciertas las alegaciones de la *Demanda* sin tomar en consideración varios documentos de los cuales debió haber tomado conocimiento judicial. Finalmente, en su tercer señalamiento de error, el Peticionario indicó que el foro primario erró al no desestimar el caso de marras por prescripción. Veamos.

Por estar íntimamente relacionados, procederemos a discutir los tres (3) señalamientos de error formulados por el Peticionario de manera conjunta. El 24 de septiembre de 2024, el foro *a quo* dictó y notificó una *Resolución* mediante la cual declaró *No Ha Lugar* dos (2) mociones de desestimación. Una de las referidas mociones se radicó bajo el fundamento de falta de legitimación activa, toda vez que la Escritura Núm. 3 hacía referencia a una asociación de residentes distinta a DCE Homeowners. Por ende, la contención del Peticionario descansó en que la Recurrida carecía legitimación activa para entablar el pleito que nos ocupa.

En su dictamen, el foro *a quo* concluyó que la controversia en torno a cuál es la asociación de residentes que la Escritura Núm. 3 hace referencia ya había sido adjudicada por esta Curia en el alfanumérico KLCE202200302. Específicamente, la *Resolución* recurrida **hace referencia directa a la página 24 de la *Sentencia*** que un panel hermano emitió el 27 de junio de 2022. En su dictamen, el foro primario razonó que el Tribunal de Apelaciones concedió el remedio solicitado por la Recurrida en el aludido caso, "haciendo extensivo a dicha parte, el derecho que la Escritura Núm. 13 [sic] le confirió a la Asociación [DCE Homeowners] que se

identifica en la misma".[20] Agregó además, que el foro apelativo "reconoció expresamente la legitimación de la parte demandante [DCE Homeowners] para hacer valer los derechos de los residentes de la urbanización Dorado Country Estates en este caso".[21]

No empece a lo anterior, nos corresponde aclarar el alcance de la determinación emitida por el Panel Hermano en el KLCE202200302 y que dista de la interpretación del foro primario de la Sentencia emitida. La *Sentencia* que dictó el panel hermano y la cual el foro primario cita y utiliza para fundamentar su determinación, estuvo acompañada de un voto de conformidad y disidente en parte, escrito por la jueza Santiago Calderón y a la cual esta jueza ponente se unió.[22] El Artículo 10 (D) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.10 (D), dispone que "[l]as decisiones del Tribunal de Apelaciones las certificará el Secretario o la Secretaria. En toda decisión **deberá constar la anuencia de los Jueces y Juezas que componen el Panel o de la mayoría de éstos, así como la concurrencia o disidencia de alguno en el resultado**". (Énfasis suplido)

Nótese que en la *Sentencia* del KLCE202200302, la ponencia de la jueza Birriel Cardona contó con la anuencia de la totalidad las miembros del panel en cuanto a la disposición de dicho caso, respecto "a expedir el auto de *certiorari* y revocar la *Resolución y Orden* impugnada, para evitar un fracaso de la justicia".[23] Sin embargo, en el *Voto de Conformidad y Disidente en Parte de la Jueza Santiago Calderón* se desprende la siguiente expresión: **"[n]o obstante, disiento sobre la parte de la *Sentencia,* que se adentra**

---

[20] Véase, apéndice del recurso, pág. 4. Si bien en la *Resolución* recurrida, se hace alusión a una "Escritura Núm. 13", la *Sentencia* emitida por el panel hermano en todo momento hace referencia a la Escritura Núm. 3, la cual es la misma que aparece en el expediente ante nuestra consideración.
[21] *Íd.*
[22] Cabe mencionar que la Orden OAJP-2021-086 intitulada *Normas para la Asignación de Recursos Nuevos Previamente Presentados en el Tribunal de Apelaciones* dispone que, un mismo panel del Tribunal de Apelaciones atenderá los diversos recursos que durante el curso ordinario genere un mismo caso.
[23] Véase, apéndice del recurso, pág. 413.

**a realizar determinaciones y/o conclusiones sobre la Escritura Núm. 3, Artículo VIII, Sección III, Inciso D, las cuales aún no han sido consideradas por el TPI**".[24] Es preciso resaltar, que en dicha oración se contenía un escolio que leía: "[v]éase páginas 23 y 24 de la Opinión Particular de Conformidad de la Jueza Birriel Cardona". [25] Es decir, **dos (2) de las tres (3) juezas** que constituían el panel, expresaron **no estar de acuerdo con el contenido de las páginas 23 y 24** de la ponencia de la jueza Birriel Cardona. Por tales circunstancias, el fundamento medular para la determinación que emitió el foro primario para denegar la moción de desestimación por falta de legitimación activa no procede. Es necesario subrayar que, tal y como expresáramos dos (2) de las tres (3) juezas que constituimos el panel hermano:

> [E]l foro *a quo* suspendió las vistas evidenciarias sobre Injunction Preliminar y la Orden de Prohibición de Enajenar, las cuales tienen el objetivo de adjudicar las controversias que giran en torno a la Escritura Núm. 3. **Por lo tanto, el expediente del caso claramente demuestra que carecemos de jurisdicción en este momento para <u>adjudicar</u> las alegaciones jurídicas relacionadas a la Escritura Núm. 3, puesto que el TPI no ha resuelto aún**. [26]

En otras palabras, la posición de la mayoría del panel es que aún persiste controversia relacionada a la Escritura Núm. 3, sobre cuál es la asociación de residentes que ostenta legitimación activa para incoar las correspondientes reclamaciones relacionadas a la controversia del Lote Núm. 43 de la Urbanización. Por consiguiente, no se puede concluir que lo planteado en las páginas 23 y 24 de la *Sentencia* en el caso KLCE202200302 constituyan ley del caso.

Asimismo, es improcedente la determinación de denegar la moción de desestimación por el fundamento de prescripción, toda vez que el foro primario basó su análisis en dos (2) alegaciones de la

---

[24] *Íd.*, pág. 414.
[25] *Íd.*
[26] *Íd.*

*Demanda* incoada por DCE Homeowners. Ello, ya que el foro *a quo* razonó que el término prescriptivo que tenía la Recurrida para interponer, ya sea una causa de acción contractual o una relacionada a la servidumbre de equidad, comenzaría a transcurrir desde dos fechas: cuando los dueños de las residencias de la Urbanización obtuvieron el control de la DCE Homeowners y cuando esta organización advino en conocimiento que DCE Enterprises tenía intenciones de vender las áreas recreativas de la Urbanización. Es decir, el razonamiento del foro primario parte de la premisa que el DCE Homeowners tiene legitimación activa, algo que como ya discutimos, aun no se ha resuelto en sus méritos.

En conclusión, toda vez no se ha resuelto cual es la asociación de residentes con derecho a incoar la reclamación que inició este pleito, en nuestro ejercicio de discreción, corresponde expedir el auto de *certiorari*, y revocar la resolución recurrida. Le corresponder al foro primario pasar juicio sobre la legitimación activa de la parte Recurrida, DCE Homeowners.

**IV.**

Por los fundamentos anteriormente expuestos, **expedimos** el auto de *certiorari* y **revocamos** la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>
Secretaria del Tribunal de Apelaciones