Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| CONTAINER BAY, LLC, JOSEMID RODRÍGUEZ FRANQUI, YOLANDA NEGRÓN AVILÉS Y OTROS<br><br>Recurridos<br><br>V.<br><br>**CHINCHORRO VISTA AL MORRO, INC.**, GUSTAVO SÁNCHEZ SÁNCHEZ, RUBÉN JORDI CARBONELL FERNÁNDEZ Y OTROS<br><br>Peticionarios | TA2025CE00546 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2025CV03485<br><br>Sobre: Injunction (Entredicho Provisional, Injunction Preliminar y Permanente), Daños Incumplimiento de Contrato, Enriquecimiento Injusto |

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard

Álvarez Esnard, jueza ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 14 noviembre de 2025.

Comparece ante nos, Chinchorro Vista al Morro, Inc. ("Chinchorro" o "Peticionario") mediante *Petición de Certiorari* presentada el 2 de octubre de 2025. Nos solicita la revocación de la *Resolución* emitida y notificada el 25 de septiembre de 2025, por el Tribunal de Primera Instancia, Sala Superior de Bayamón ("foro primario" o "tribunal *a quo*"). En virtud de dicho dictamen, el foro primario declaró *No Ha Lugar* la moción de desestimación presentada por el Peticionario, a la cual se unió el señor Gustavo Sánchez Sánchez ("señor Sánchez Sánchez"). En consecuencia, ordenó la continuación de los procedimientos.

Por los fundamentos que expondremos a continuación, **denegamos** el presente recurso.

**I.**

El pleito ante nuestra consideración tuvo su inicio el 27 de diciembre de 2024, cuando el Peticionario presentó una *Demanda* sobre desahucio, incumplimiento de contrato y cobro de dinero contra Container Bay, LLC. ("Container Bay"), en relación a un inmueble ubicado en el municipio de Cataño.[1] Tras múltiples incidencias procesales, las partes alcanzaron un acuerdo transaccional que quedó recogido en una *Sentencia* emitida el 1 de abril de 2025, notificada al próximo día.[2] No empece a lo anterior, el 9 de abril de 2025, Chinchorro comunicó al tribunal *a quo* que Container Bay había incumplido con los acuerdos consignados en la *Sentencia*, por lo que solicitó el desalojo inmediato del inmueble.[3] A esos efectos, el 29 de abril de 2025, el foro primario emitió y notificó una *Orden de Lanzamiento* en el caso BY2024CV07568, en la que ordenó el desalojo de la propiedad objeto de controversia.[4]

Así las cosas, el 1 de julio de 2025, Container Bay, Joseamid Rodríguez Franqui ("señor Rodríguez Franqui"), Yolanda Negrón Avilés y la Sociedad de Bienes Gananciales compuesta por ambos, (en conjunto, "Parte Recurrida"), instaron una *Demanda* sobre relevo de sentencia, injunction preliminar y permanente, daños y perjuicios, incumplimiento de contrato, dolo contractual y enriquecimiento injusto, entre otras, contra el Peticionario, el señor Sánchez Sánchez por sí y en representación de Chinchorro; Rubén Carbonell Fernández ("señor Carbonell Fernández"), María Matilde García Lamadrid y la Sociedad de Bienes Gananciales compuesta por ambos y otros demandados de nombre desconocido.[5]

---

[1] Véase, expediente del caso BY2024CV07568 en el Sistema Unificado de Manejo y Administración de Casos del foro primario (SUMAC TPI), Entrada 1.
[2] *Íd.*, Entrada 38.
[3] *Íd.*, Entrada 40.
[4] *Íd.*, Entrada 44.
[5] Véase, SUMAC TPI, Entrada 1.

En esta, la Parte Recurrida alegó que en enero de 2021, el señor Sánchez Sánchez, en representación de Chinchorro, le realizó una propuesta de arrendamiento de un negocio localizado en un terreno ubicado en el municipio de Cataño, alegando falsamente que era su dueño o que tenía facultad para disponer del mismo. Indicó que, bajo la creencia de que dicha información era cierta, el 1 de febrero de 2021, el señor Rodríguez Franqui suscribió un contrato de subarrendamiento con este, mediante el cual le otorgó el uso y disfrute del inmueble en cuestión.

No obstante lo anterior, esgrimió que simultáneamente y sin su conocimiento, el señor Sanchez Sánchez había celebrado un contrato de arrendamiento con el señor Carbonell Fernández, que establecía expresamente que: (1) el terreno donde ubicaba el negocio era propiedad exclusiva de este último; (2) Chinchorro actuaría únicamente como arrendatario del solar y podía subarrendar el local ubicado en este y, (3) posteriormente se firmaría un contrato de opción de compraventa.

Señaló que, a pesar de ello, el señor Sánchez Sánchez suscribió otros contratos de compraventa simulada con Container Bay y el señor Rodríguez Franqui en su carácter personal, en los cuales se comprometió a venderle el solar antes de que venciera el término de subarrendamiento, pese a que reconoció que no era el titular registral del terreno. Así, adujo que, confiando en la legitimidad de dichos acuerdos, invirtió más de trescientos mil dólares ($300,000.00) en la rehabilitación del local.

Añadió que, posteriormente, el señor Sánchez Sánchez adquirió la titularidad del mediante una escritura de compraventa, garantizada por una hipoteca constituida a favor del señor Carbonell Fernández y su esposa. Sin embargo, sostuvo que, en lugar de cumplir con su promesa de venta, el 2 de noviembre de 2024, el señor Sánchez Sánchez cerró unilateralmente la cuenta bancaria

designada para el depósito de los cánones de arrendamiento pactados en el contrato suscrito con el señor Rodriguez Franqui. Manifestó que dicha actuación constituyó una estrategia dirigida a fabricar un supuesto incumplimiento de contrato para justificar el proceso de desahucio previamente mencionado.

A la luz de lo anterior, arguyó que Chinchorro y el señor Sánchez Sánchez actuaron de mala fe, incurrieron en dolo, enriquecimiento injusto y abuso de derecho, ocasionándole daños económicos, operacionales y de reputación. Cónsono a ello, solicitó, entre otros: (1) un injunction preliminar contra Chinchorro, el señor Sánchez Sánchez y el señor Carbonell Fernández y otros, a los fines de que cesaran y desistieran de la ejecución o continuación de las gestiones relacionadas al lanzamiento; (2) un injunction permanente para ordenar al Peticionario, al señor Sánchez Sánchez y al señor Carbonell Fernández abstenerse de ejecutar, promover o beneficiarse de cualquier medida dirigida a privar a la Parte Recurrida de la operación, posesión, control, usufructo o continuidad del negocio, y para que restituyeran los derechos, activos, mejoras, contratos, operaciones y beneficios relacionados a este y, (3) una suma total de un millón trescientos mil dólares ($1,300,000.00) por concepto de daños y perjuicios, enriquecimiento injusto, simulación contractual, fraude y abuso del proceso judicial, a ser satisfecha solidariamente entre Chinchorro, el señor Sánchez Sánchez y el señor Carbonell Fernández.

En lo atinente al asunto ante nuestra consideración, el 8 de agosto de 2025, el Peticionario instó una *Moción de Desestimación.*[6] A través de esta, sostuvo que las controversias entre las partes habían sido objeto de transacción judicial, por lo que no podían ser relitigadas. En ese sentido, precisó que la defensa de cosa juzgada

---

[6] Véase, SUMAC TPI, Entrada 28.

operaba sobre todas las alegaciones relacionadas a sucesos ocurridos con anterioridad a dicha transacción.

Por otro lado, arguyó que el tribunal *a quo* carecía de jurisdicción para atender la solicitud de relevo de sentencia de la Parte Recurrida, toda vez que esta mantenía una deuda por concepto de cánones de arrendamiento. Asimismo, expresó que, en caso de que el foro primario determinara que tenía jurisdicción, las controversias planteadas por la Parte Recurrida debían "ser referidas para ser resueltas en el caso de desahucio, ante el Tribunal de San Juan, y luego de obtener el aval del Tribunal de Apelaciones"[7], conforme a lo dispuesto en la Regla 49.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 49.2.

En igual fecha, el señor Sánchez Sánchez presentó una *Moción Uniéndose a Moción de Desestimación presentada por Chinchorro Vista al Morro, Inc.*, en la que se unión a la moción antes reseñada y solicitó la desestimación del pleito.[8]

En respuesta, el 25 de agosto de 2025, la Parte Recurrida instó *Moción en Oposición a "Mocion [SIC] de Desestimación"*.[9] En síntesis, manifestó que su causa de acción se fundamentaba en actuaciones y omisiones incurridas por Chinchorro y el señor Sánchez Sánchez luego de dictada la *Sentencia* en el caso BY2024CV07568, por lo que no aplicaba la defensa de cosa juzgada.

De otra parte, puntualizó que el planteamiento relativo a la falta de jurisdicción por no haber consignado los cánones de arrendamiento carecía de méritos. Explicó que dicha norma aplicaba únicamente "a apelaciones en procedimientos especiales de desahucio incoados por falta de pago... pero no tiene aplicación

---

[7] *Íd.*, pág. 13.
[8] Véase, SUMAC TPI, Entrada 30.
[9] Véase, SUMAC TPI, Entrada 34.

fuera del proceso sumario ni cuando se plantea una controversia nueva y distinta".[10]

Por último, sostuvo que su *Demanda* no constituía un intento de revivir defensas que pudieron haberse ventilado en el procedimiento de desahucio, sino que se trataba del ejercicio independiente de una causa de acción autónoma y distinta, expresamente autorizada por la Regla 49.2 de Procedimiento Civil, *supra.*

Considerados los planteamientos esbozados de las partes, el 25 de septiembre de 2025, el tribunal *a quo* emitió *Resolución.*[11] Por medio de esta, concluyó que la *Demanda* exponía una reclamación que justificaba la concesión de un remedio. En vista de ello, razonó que ostentaba jurisdicción sobre la materia para examinar la reclamación de la Parte Recurrida. A su vez, determinó que no aplicaba la doctrina de cosa juzgada e impedimento colateral por sentencia, puesto que los hechos planteados en la *Demanda* estaban relacionados a actuaciones posteriores al acuerdo transaccional alcanzado por las partes en el caso BY2024CV07568.

A tenor de lo anterior, el foro primario razonó que correspondía "permitir que se pueda realizar el descubrimiento de prueba correspondiente y que en su día este Tribunal pueda aquilatar la evidencia en torno al relevo de sentencia".[12] En consecuencia, declaró *No Ha Lugar* la moción de desestimación presentada por Chinchorro, a la cual se unió el señor Sánchez Sánchez, y ordenó la continuación de los procedimientos.

En desacuerdo, el 30 de septiembre de 2025, el Peticionario incoó *Urgentísima Moción de Reconsideración.*[13] En esencia, indicó que la orden de lanzamiento en el caso BY2024CV07568 había

---

[10] *Íd.*, págs. 16-17.
[11] Véase, SUMAC TPI, Entrada 36.
[12] *Íd.*, pág. 54.
[13] Véase, SUMAC TPI, Entrada 38.

adjudicado precisamente las actuaciones posteriores al acuerdo transaccional. De igual forma, insistió en que la Parte Recurrida pretendía relitigar asuntos que ya habían sido planteados y rechazados en el otro caso. Por otra parte, reiteró que la solicitud de relevo de sentencia debió presentarse en el caso BY2024CV0756 y no a través de una acción independiente.

El mismo día, notificada el 1 de octubre de 2025, el foro primario declaró *No Ha Lugar* la solicitud de reconsideración.[14]

Inconforme aún, el 2 de octubre de 2025, el Peticionario compareció ante esta Curia mediante el recurso de epígrafe y formuló los siguientes señalamientos de error:

> Erró el Honorable Tribunal de Primera Instancia y actuó contrario a derecho al dar curso a una acción independiente de relevo de orden de lanzamiento cuando no existe alegación de nulidad ni fraude al tribunal.

> Erró el Honorable Tribunal de Primera Instancia y cometió un grave abuso de discreción al ordenar una anotación de demanda sin celebración de vista previa.

> Erró el Tribunal de Primera Instancia y cometió grave abuso de discreción al ordenar la celebración de vista de remedios provisionales a posteriori para confirmar una orden de anotación de demanda que es nula.

> Erró el Tribunal de Primera Instancia y cometió grave abuso de discreción al auscultar remedios provisionales contrarios a la sentencia y orden y mandamiento del caso.

Junto a su recurso, el Peticionario presentó *Urgente Solicitud de Remedio en Auxilio de Jurisdicción*, mediante la cual solicitó a esta Curia la paralización de los procedimientos en el foro primario hasta tanto se resolviera el recurso de *certiorari* ante nuestra consideración. El 3 de octubre de 2025, esta Curia emitió *Resolución*, en la que declaró *No Ha Lugar* la solicitud en auxilio de jurisdicción. Además, concedió a la Parte Recurrida hasta el 14 de octubre de 2025 para que se expresara en torno al recurso instado.

---

[14] Véase, SUMAC TPI, Entrada 47.

Así pues, el 8 de octubre de 2025, la Parte Recurrida presentó *Moción Urgentísima en Solicitud de Prórroga* mediante la cual solicitó treinta (30) días adicionales para presentar su escrito. El 10 de octubre de 2025, emitimos *Resolución*, en la cual le concedimos hasta el 20 de octubre de 2025 para que expusiera su posición en torno al recurso. Posteriormente, el 14 de octubre de 2025, el señor Sánchez Sánchez instó *Alegato en Apoyo a que se Expida Auto de Certiorari*. Finalmente, el 20 de octubre de 2025, la Parte Recurrida presentó *Oposición a Petición de Certiorari*.

Con el beneficio de la comparecencia de las partes, procedemos a exponer la normativa jurídica aplicable al caso ante nuestra consideración.

## II.

### *A. Certiorari*

"[U]na resolución u orden interlocutoria, distinto a una sentencia, es revisable mediante *certiorari* ante el Tribunal de Apelaciones". *JMG Investment v. ELA et al.*, 203 DPR 708, 718 (2019). El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023). Véase, además, *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023).

No obstante, la discreción del tribunal apelativo en este aspecto no opera en un vacío ni en ausencia de parámetros. *BPPR v. SLG Gómez-López*, 213 DPR 314, 337 (2023). La Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025), señala los criterios que se deben tomar en consideración al evaluar si procede expedir un auto de *certiorari*. *Íd.* Estos criterios son:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El Tribunal Supremo ha expresado que la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019).

### B. Desestimación al amparo de la Regla 10.2 (5) de Procedimiento Civil

En nuestro esquema procesal, la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, permite a la parte demandada solicitar la desestimación de la acción legal antes de contestarla "cuando es evidente de las alegaciones de la demanda que alguna de las defensas afirmativas prosperará". *Collazo Muñiz v. Aliss*, 215 DPR ___ (2025), 2025 TSPR 22, pág. 5 citando a *Sánchez v. Aut. de los Puertos*, 153 DPR 559, 569 (2001). Véase también, *Inmob. Baleares et al. v. Benabe et al.* 214 DPR ___ (2024) 2024 TSPR 112, pág. 18-19 citando a *Conde Cruz v. Resto Rodríguez et al.*, 205 DPR 1043, 1065 (2020). La precitada regla fija los siguientes fundamentos para solicitar la desestimación: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; y (6) dejar de acumular una parte indispensable. 32 LPRA Ap. V, R. 10.2. (Énfasis nuestro).

En lo pertinente, el inciso (5) de la Regla 10.2 de Procedimiento Civil, *supra,* permite la desestimación de una demanda bajo el fundamento de que no expone una reclamación que justifique la concesión de un remedio. En este contexto, los tribunales están obligados a tomar como ciertos todos los hechos bien alegados en la demanda que hayan sido aseverados de manera clara y concluyente y, a su vez, considerarlos de la forma más favorables a la parte demandante. *BPPR v. Cable Media,* 215 DPR___ (2025) 2025 TSPR 1, pág. 11.

No obstante, para que prevalezca una moción de desestimación al amparo de la Regla 10.2 (5) de Procedimiento Civil, *supra,* esta "debe establecer con toda certeza que la parte demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que pueda ser probado en apoyo a su reclamación, aun interpretando la demanda de la forma más liberal posible a su favor". *Díaz Vázquez et al. v. Colón Peña et al.*, 214 DPR___ (2025) 2024 TSPR 113, pág. 16. Tampoco procede la desestimación si el remedio no procede bajo ningún supuesto de derecho ni pueda ser enmendada para subsanar cualquier deficiencia. *Íd.*

Por otra parte, el tribunal debe examinar si "a la luz de la situación más favorable al demandante, y resolviendo toda duda a su favor, la demanda es suficiente para constituir una reclamación válida". *BPPR v. Cable Media., supra,* pág. 12.

**III.**

Expuesto el marco jurídico y ponderados los argumentos presentados por las partes, resolvemos que no se han producido las circunstancias que exijan nuestra intervención en esta etapa de los procedimientos. Al amparo de los criterios que guían nuestra discreción, no intervendremos en la determinación recurrida emitida por el foro primario. En el presente caso, el Peticionario no

ha demostrado que el foro primario se excedió en el ejercicio de su discreción, ni que erró en la interpretación del derecho. Tampoco constató que el abstenernos de interferir en la determinación recurrida constituiría un fracaso irremediable de la justicia en esta etapa de los procesos. Cónsono con lo antes expuesto, no intervendremos con la determinación discrecional del tribunal *a quo*, por lo que procede que se deniegue el recurso de *certiorari* de epígrafe.

Nuestra determinación de no intervenir en los méritos de la decisión recurrida en estos momentos no constituye una adjudicación de la controversia existente entre las partes ni prejuzga el asunto planteado por estas.

**IV.**

Por los fundamentos expuestos, **denegamos** la expedición del auto de *certiorari.*

**Notifíquese inmediatamente.**

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones